[No. 12453.    In Bank. — November 29, 1889.]

PEKIN MINING AND MILLING COMPANY, RESPONDENT, *v.* JAMES H. KENNEDY ET AL., APPELLANTS.

DEED — "GRANT AND QUITCLAIM" — UNITED STATES HOMESTEAD CLAIM — AFTER-ACQUIRED TITLE. — A deed which contains the words "grant and quitclaim," made by the claimant of a homestead under the laws of the United States, carries the title after acquired by such claim, and through a patent from the United States, though the word "grant" be printed, and the words "and quitclaim" be written thereafter by the grantee.

ID. — CONVEYANCE BY MINING CORPORATION — RATIFICATION BY STOCK-HOLDERS — EJECTMENT AGAINST THIRD PARTIES. — A conveyance of

the real property of a mining corporation under its corporate seal, which is not proved to have been ratified by two thirds of its stockholders, as provided by section 1 of the act of April 23, 1880 concerning mining corporations, does not pass title to the grantee, and will not sustain an action of ejectment by such grantee for the land described in the deed, as against third parties without title.

EXECUTION SALE — REDEMPTION — AMENDMENT OF CERTIFICATE OF SALE — INCORRECT REFERENCE TO SALE. — When a redemption is effected from an execution sale by persons having a right to redeem, by paying to the person named in the original recorded certificate of sale the requisite amount of redemption money, and receiving from him a certificate of redemption, without knowledge that any other or amended certificate of sale had been given, no title can pass under a subsequent amended certificate of sale to another person, if such amended certificate did not properly refer to the sale, though such amended certificate had been recorded before the redemption, and though the person named therein was the real purchaser at the sale.

ID. — FRAUD IN EXECUTION SALE OF CORPORATE PROPERTY — CONSPIRACY TO DETER BIDDERS. — An execution sale of corporate property, which is brought about by the fraud of a director and superintendent of the corporation, in conspiring with others who knew of his directorship and superintendency to obtain the title to themselves, and to deter bidders and prevent a fair sale, is rendered invalid by such fraud, and can confer no title.

ID. — SALE UNDER EXECUTION AGAINST FRAUDULENT CONSPIRATORS. — When a deed under execution obtained through a fraudulent conspiracy is invalid for fraud, an execution sale against the conspirators cannot pass title.

ID. — GRANT OF LEGAL TITLE TO CORPORATION — ESTOPPEL OF FRAUDULENT CONSPIRATORS. — When one of several persons who have conspired fraudulently to obtain the title to corporate property grants the legal title to another, through whom it passes to the corporation, the other conspirators cannot successfully stop the flow of the legal title to the corporation by the assertion of equitable claims founded upon their own fraud, and upon the agreement of the grantor to hold the title for their benefit, in fraud of the rights of the corporation.

APPEAL from a judgment of the Superior Court of El Dorado County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Blanchard & Swisler*, for Appellants.

*Marcus P. Bennett*, for Respondent.

McFarland, J. — This is an action of ejectment to recover a tract of land containing about five and one half acres, situated in section 29, township 9 north, range 10 east, Mount Diablo meridian, in El Dorado County. The findings and judgment were for plaintiff, and defendants appeal from the judgment, and from an order denying a new trial.

The land in contest constitutes a part of what is known as the "Oro Fino quartz mine," which was surveyed by a United States mineral surveyor, and marked out, etc., in 1880. No patent seems to have been obtained for the land as mining ground; but plaintiff claims to have acquired the United States government title through one Charles P. Schenck, who was a homestead claimant of that part of said section 29 which includes the land in contest. In June, 1882, Schenck received a patent from the United States for the land covered by his homestead claim, but on September 11, 1880, when he was only a homestead claimant, and had not made his final proof, by a deed which was never recorded, he "granted and quitclaimed" a part of the land described in the complaint to one William H. Miller. The deed was drawn by Miller on a blank in which was printed the word "grant"; and immediately after that word he wrote the words "and quitclaim." He knew that Schenck had not proved up his homestead claim. Prior to the year 1883, and subsequent to November, 1881, the land described in said deed from Schenck to Miller had been conveyed from said Miller, through mesne conveyances, all recorded, to the Oro Fino Gold Mining and Milling Company of El Dorado, a mining corporation existing under the laws of the state of Illinois; which corporation had built a mill on the land at a cost of eighteen thousand dollars, and had sunk a shaft to the depth of 130 feet, and had done other work, at large expense. On April 9, 1885, a deed was made, which purports, on its face, to be the deed of said last-named

corporation, and which, if it be a valid deed of said corporation, conveys to the plaintiff herein all the land described in the complaint. The name of the corporation is signed to it, and also the names of persons assuming to be its president and secretary, who acknowledged it in due form before a notary, and it has affixed to it the corporate seal. There was no evidence offered, however, to show that the deed had been authorized by the trustees of the corporation, or that it was ratified by two thirds of the stockholders, nor was there any other proof of its execution; and defendants objected for these reasons to its introduction. The objection was overruled.

On February 20, 1884, said Schenck, having then obtained his patent from the United States, as hereinbefore stated, executed to one Frank B. Ogden a quitclaim deed to all the land sued for in this action. On July 9, 1884, said Ogden, by deed, bargained, sold, and quitclaimed all said land to A. J. Mason, Robert Gay, and Peter Baker, and on February 21, 1887, said Mason, Gay, and Baker, by deed, " granted, bargained, and sold" all said land to the plaintiff herein. So the plaintiff claims the government title through said patentee, Schenck, by two courses: 1. The one which ended in the alleged deed from the Oro Fino corporation to plaintiff; and 2. The one which ended in the deed to plaintiff from said Mason, Gay, and Baker.

Defendants deny the title of plaintiff, and set up title in one Mathilda De Lescault, with whose consent they claim to be in possession.

We think, however, that no title was shown to be in said Lescault. Her asserted title rests upon execution sales under two judgments, the one known as the Phelps judgment, and the other as the Park Canal Company judgment. With respect to the sale under the Phelps judgment, the facts as found by the court are these: In 1883 the said W. H. Miller made two trips from Califor-

nia to Chicago, where the principal place of business of the said Oro Fino mining corporation was, for the purpose of procuring himself to be elected a director, and to be appointed the superintendent of said mine, and on the last trip was successful. After his return, and while he was such superintendent, and as such in charge of said mine, he entered into a contract (about which, however, there had been former negotiations) with the defendants, Kennedy and Bargion, by which the three were to take possession of and work the mine — including the mill and all the land described in the complaint herein, and the adjoining ground of said corporation known as the McMahon ground — as partners, ignoring the right of said corporation, and intending to get the title unto themselves. In accordance with this agreement, Miller let the said two defendants into joint possession with him, and the three commenced to work the mine as partners. The facts of Miller's directorship and superintendency of the corporation, and the right of the latter to the mine, were well known to said defendants. In September, 1883, one Josiah Phelps commenced an action in a justice's court against said Oro Fino corporation to recover a small sum of money. Miller appeared as managing agent and superintendent, and answered for the corporation. At the trial Kennedy appeared for the corporation at the request of Miller, and judgment was rendered against the corporation for $186.85 and costs. Execution was issued and levied on the mine, and on March 22, 1884, the day of the constable's sale, the mine was knocked down to Kennedy for the sum of $280. It had been agreed between Miller, Bargion, and Kennedy that the latter should bid off the property in his own name. But it had also been agreed between Miller and Frank B. Ogden (hereinabove mentioned) that said Ogden should attend the sale for the purpose of procuring the title to said mine to be taken in his (Ogden's) name. Ogden attended the sale, and it was

agreed between him and Kennedy that, for the purpose of deterring bidders, Ogden should give public notice at the sale that the mine did not belong to said Oro Fino corporation, but was the property of him (Ogden). Such notice was accordingly given, and the mine was bid in by Kennedy, as before stated. But another complication arose. Ogden volunteered his assistance to the justice of the peace to write out the certificate of sale, and inserted therein his own name as purchaser instead of that of Kennedy. This was not known to or discovered by the constable (Cline) or Kennedy. It was signed by the constable, and filed in the office of the county recorder, as provided by law. This was on March 22, 1884, and the mistake was not discovered until the next July; and on the 12th of said July the constable undertook to remedy the mistake by issuing another certificate to Kennedy; but this second certificate recited a levy and sale as taking place on said twelfth day of July instead of March 22d. It was filed for record July 19, 1884. Kennedy assigned his certificate to Ella C. Gates on August 18, 1884, and on September 22, 1884, the constable executed a deed to said Gates. On December 30, 1884, the said Gates executed a grant deed of the mine to the said Mathilda De Lescault. The said Gates and Lescault were relatives of defendants, and there is no evidence that they were purchasers for value. But in the mean time Mason, Gay, and Baker (hereinbefore mentioned), having the right to redeem, paid the said Ogden on September 20, 1884, the full amount necessary to redeem the mine from said sale of March 22, 1884, and received from said Ogden a certificate of such redemption, which was recorded October 1, 1884, and they had no knowledge that there was any other certificate of sale than the one in which Ogden was named as purchaser, unless the recording of the second certificate to Kennedy, in July, constituted legal notice. Under these circumstances, we think that no

title to the premises in contest passed to Lescault through the sale under the said Phelps judgment. If the officer could amend the certificate after the lapse of several months, and if the redemptioners were called upon to look for additional certificates of the sale, still an examination of the records would not have disclosed any certificate referring to the sale of March 22, 1884; and we think, therefore, that the redemption was fully accomplished. But in addition to that, the sale itself was invalid for fraud,—fraud, first, by the director and superintendent (and those who conspired with him) against the absent corporation, whose rights he was bound to protect, and second, fraud through the conspiracy to deter bidders and prevent a fair sale.

The facts about the Park Canal Company sale are briefly these: While Miller, Kennedy, and Bargion were working the mine, they incurred a liability to the Park Canal and Mining Company, and the latter company brought a suit in the justice's court against the three. It got service on Kennedy and Bargion, but not on Miller, and took judgment against all three. Execution was issued, and the interest of the three in the mine was sold to one Crawford, who assigned his certificate of sale to Lescault, to whom the constable afterward made a deed. It is needless to determine the question discussed by counsel, whether or not a joint judgment against three defendants where only two are served is valid against either; for as the defendants in that action had no title to the mine, therefore Lescault got no title through the sale.

The only question, then, is, whether plaintiff has shown title which will support ejectment.

It is clear that plaintiff has title to all that part of the premises in contest which was not conveyed by Schenck to Miller by the deed of September 11, 1880, and which went by mesne conveyances to the Oro Fino Mining and Milling Company,— that is, to all that part conveyed

by Schenck, for the first time, to Ogden on February 20, 1884, and which went from Ogden to Mason, Gay, and Baker, and from the latter directly to plaintiff by their deed of February 21, 1885. The only thing which defendants have to say against this view is that Ogden took the deed from Schenck for the benefit of Miller and themselves. But while Miller, who procured the deed to be made by Schenck to Ogden, told Kennedy and Bargion that Ogden was to hold the title for their benefit and his own (thus cutting off the title of the Oro Fino corporation, of which he was director and superintendent), he told Schenck that Ogden was to hold for the Oro Fino corporation, and Schenck executed the deed with that express understanding. The only complaint which defendants have, therefore, on this score, is the failure to have Schenck do what he did not intend to do; and they cannot successfully stop the flow of the legal title by the obstruction of asserted equitable claims founded on their own fraud.

But the title to that part of the land in contest, described in the first deed of Schenck to Miller, — and which carried the title afterward acquired from the United States, — seems still to be in the Oro Fino Mining and Milling Company. This result comes from the fact that no evidence was offered to prove that the deed from the corporation to plaintiff was ratified by two thirds of its stockholders, as provided in section 1 of the act concerning mining corporations, which went into effect April 23, 1880. (Stats. 1880, p. 131.) In *McShane v. Carter*, 80 Cal. 310, a majority of this court held that under said statute a deed of a mining corporation of any part of its mine, not shown to have been so ratified, does not pass the title. Upon the authority of that case we therefore hold that the title to that part of the premises in contest, now under discussion, is still in the Oro Fino Mining and Milling Company, and not in plaintiff. For this reason the judgment must be reversed.

Judgment and order reversed, and cause remanded for a new trial.

SHARPSTEIN, J., FOX, J., WORKS, J., PATERSON, J., BEATTY, C. J., and THORNTON, J., concurred.