# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

## CAMPBELL v. ARGENTA GOLD & SILVER MIN. CO. et al.

### (Circuit Court, D. Montana. April 18, 1892.)

**1. MINING COMPANIES—VALIDITY OF MORTGAGE—PUBLICATION OF NOTICE.**
Comp. St. Mont. div. 5, § 492, provides that the officers of a mining company shall not mortgage its property, except in pursuance of an order of a stockholders' meeting convened by publication of notice, etc. *Held*, that a mortgage executed by the unanimous order of a stockholders' meeting of such company, at which all of the stockholders were present, but which was convened without observing the statutory requirements, was not void, but voidable only.

**2. SAME—AVAILABILITY OF OBJECTION.**
The corporation and its stockholders were the only persons who could take advantage of the voidability of the mortgage. The defect could not be availed of by others holding liens on the mortgaged property.

**3. SAME—ESTOPPEL.**
The corporation and stockholders, having received the benefit of the mortgage, were estopped to deny its validity.

In Equity. Suit by S. L. Campbell, trustee, against the Argenta Gold & Silver Mining Company and others. Heard on demurrer to the bill. Demurrer overruled.

*Henry G. McIntire* and *Henri J. Burleigh*, for complainant.

*Forbis & Forbis, Edwin Norris*, and *Word & Smith*, for defendants.

KNOWLES, District Judge. This is a bill in equity seeking the foreclosure of a mortgage upon certain real property belonging to the defendant the Argenta Gold & Silver Mining Company. The property is situate in Beaverhead county, this state. The Argenta Company is a corporation organized under the laws of Montana. Most of the defendants reside in Montana, and are citizens of this state. None of the defendants are citizens of the state of Minnesota, of which state the plaintiff, it appears from the bill of complaint, is a citizen. The bill has the further object of declaring its mortgage lien a prior lien to that of liens claimed by the defendants, other than the Argenta Company, upon the

property embraced in the mortgage.   It is set forth in the bill that these defendants claim, for certain reasons which appear in the bill, that the mortgage securing the bonds held by plaintiff is void.   The bill alleges that a certain other corporation, known as the "P. J. Kelly Placer & Quartz Mining & Reduction Company," was the owner of the premises described in plaintiff's mortgage.   That it became involved, and judgments were obtained against it, which it was unable to liquidate. With the view of raising money to pay this indebtedness, it appears that it was proposed that a new company be formed and incorporated, and the property of the Kelly Company should be conveyed to it, and an arrangement made by which it should become the property of said new corporation freed from the liens of the said judgment creditors.   That then this new corporation should issue bonds in the sum of $75,000, which should be secured by a first mortgage upon the said premises.   In pursuance of this agreement, the indebtedness of the Kelly Company was all assigned to one H. Howes, and the said premises conveyed to him.   The Argenta Gold & Silver Mining Company was incorporated. Howes then conveyed the said property to this new corporation, and received as a consideration therefor $75,000 in the first mortgage bonds of said Argenta Company, and a mortgage to secure their payment. Some of the creditors of the Kelly Company received some of these bonds in payment of their claims against it.   The balance were sold, and the proceeds applied to the payment of the said Kelly Company indebtedness, which had been assigned to Howes.   Two thousand dollars, or about that sum, was received in excess of the amount required to settle the Kelly Company claims, and this was turned over to the Argenta Company, which used it in its mining operations.

There is no dispute but that the Kelly Company complied with all the provisions of the statute law bearing upon the matter before transferring its property to Howes.   The real controversy in this case arises as to the validity of the mortgage of the Argenta Company to Howes. The bill alleges that this company on the 12th day of December, 1889; at a meeting thereof held at Dillon, Mont., all of the stockholders being present and assenting thereto, voted and resolved, in substance, that, for the purpose of raising funds to buy said property of the said Kelly Company, the Argenta Company issue its bonds in the sum of $75,000, in denominations of $500 each, running five years, with interest at the rate of 10 per cent. per annum, payable semiannually, to be secured by a mortgage upon said property to be purchased from the said Kelly Company, in case a purchase thereof could be effected; and the president of the Argenta Company was, by the unanimous vote of the stockholders, duly authorized and empowered to make all necessary arrangements for procuring and negotiating said bonds, with full power in the premises; that is to say, to procure a conveyance of said property to the Argenta Company, execute said mortgage thereon, and issue said bonds secured thereby, and negotiate the same.   That in pursuance of these resolutions the president and secretary of the Argenta Company executed for the same said mortgage, and signed the said company's name

thereto. There was no notice of the meeting of the stockholders published in any newspaper or otherwise, for any time. There was no record of any resolutions or authority duly authorizing the trustees of the Argenta Company to make said mortgage filed in the office of the county recorder in and for said Beaverhead county. What was done by the stockholders in regard to the mortgage was done before the company had obtained the title to the property. The creditors of the Argenta Company, parties herein, and alleged to claim liens upon the premises described in the aforesaid mortgage, filed their demurrer to this bill, in which it is set forth that from the showing in the same it appears that the plaintiff is not entitled to the relief asked. It is contended by defendants that the mortgage is void, because it appears in the bill that it was not executed in the manner provided in the statute law of Montana. Said statute is as follows:

"Sec. 492. The board of trustees or officers of any mining corporation organized under the provisions of article one, chapter fifteen, of the fifth division of the Revised Statutes [chapter 25 of the Compiled Statutes] of this territory, shall not have power to sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground, quartz mills, smelters, concentrators, or reduction works of such corporation, unless they shall have first called a meeting of the stockholders of such corporation in the manner prescribed in section four hundred and sixty-eight of said article, [chapter 25,] for the purpose of submitting to the stockholders of such corporation the proposition so to sell, lease, mortgage, or otherwise dispose of the property of such corporation, or some portion thereof. The notice so required to be published and sent to each stockholder shall distinctly specify each particular tract or piece of property so to be leased, sold, mortgaged, or otherwise disposed of, and the particular disposition to be made thereof."

The 468th section, above referred to, so far as it affects this question, is as follows:

"Whenever any company shall desire to call a meeting of stockholders for the purpose of availing itself of the privilege of this chapter, or for increasing or diminishing the amount of its capital stock, or for extending or changing its business, it shall be the duty of the trustees to publish a notice, signed by at least a majority of them, in a newspaper in the county, if any shall be published therein, at least six successive weeks, and to deposit a written or printed copy thereof in the post office, addressed to each stockholder at his usual place of residence, at least six weeks previous to the day fixed for holding such meeting, specifying the object of the meeting, the time and place when and where such meeting shall be held," etc.

Section 493:

"If, at the time and place specified in the notice provided for in the preceding section, stockholders shall appear in person or by proxy, representing not less than three fourths of all the shares of stock of the corporation, they may organize by choosing one of their number chairman of the meeting, and also a suitable person for secretary, and proceed to vote on the proposition mentioned in said notice. If there are distinct pieces or parcels of property embraced in the proposition, each separate piece of property capable of being disposed of in one parcel, without material injury to the remainder, shall be voted on separately. If, on canvassing the votes, it shall be found that at least two thirds of all the shares of the capital stock of such

corporation have been voted in favor of selling, leasing, mortgaging, or otherwise disposing of a given piece or the whole of said mining property, then the chairman and secretary of such meeting shall make a certificate showing the total number of shares of the capital stock of such corporation represented in such meeting, and by whom voted, the number of shares voted in favor of the proposition, and the number of shares voted against the same. Such certificate shall be signed by the chairman, countersigned by the secretary, and verified by their oaths, taken before some officer qualified to administer oaths. Such verification shall be to the effect that the matters and things therein contained are true, and that the meeting at which such proceedings were had was called and held in pursuance of law, to the best of their knowledge, information; and belief. Such certificate shall be spread at length on the record of stockholders' meetings of such corporation, and and a copy thereof under the seal of said corporation, and attested by its president and secretary, and duly acknowledged, shall be recorded in the office of the county recorder of every county wherein any of such property is situated."

It appears affirmatively from the bill that the trustees of the Argenta Company did not perform any of the duties required in the above statutes, and that no record in the county recorder's office of the action of any meeting and votes of stockholders of that company was anywhere made. The property mortgaged consisted of a number of mining claims and reduction works. The legal decisions as to the validity of a mortgage, made under the circumstances presented in this case, are not uniform, and often not entirely satisfactory. In Cook on Stock and Stockholders of Corporations, (2d Ed.,) section 682, it is said: "There is no defined principle of law that determines whether a particular act is *ultra vires* or *intra vires*. The decisions rest largely in the discretion and sound judgment of the court." I should think that the determination of the question as to whether an act of a corporation was *ultra vires* or not should never be classed as one resting in the discretion of the court. The supreme court has maintained the doctrine, in several well-considered cases, that, where a corporation has no power in its charter or by virtue of the law under which it may be organized to make a specific contract, the same is *ultra vires*, although accompanied with the proper formalities for entering into a contract. In the case of *Thomas v. Railroad Co.*, 101 U. S. 71, the supreme court say:

"We take the general doctrine to be in this country, though there may be exceptional cases, and some authorities to the contrary, that the power of a corporation organized under legislative statutes is such, and only such, as these statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others."

To the same extent, and supporting the same doctrine, are *Pearce* v. *Railroad Co.*, 21 How. 441; *Oregon Ry. & Nav. Co.* v. *Oregonian Ry. Co.*, 130 U. S. 1, 9 Sup. Ct. Rep. 409; *Pittsburgh, C. & St. L. Ry. Co.* v. *Keokuk & H. Bridge Co.*, 131 U. S. 372, 9 Sup. Ct. Rep. 770; *Pennsylvania R. Co.* v. *St. Louis, etc., R. Co.*, 118 U. S. 290, 6 Sup. Ct. Rep. 1094.

And in the case of *Head* v. *Insurance Co.*, 2 Cranch, 127, Chief Justice MARSHALL, in delivering the opinion of the court, said:

"It is a general rule that a corporation can only act in the manner prescribed by law. When its agents do not clothe their proceedings with the solemnities which are required by the incorporating act to enable them to bind the company, the informality of the transaction, as has been properly urged at the bar, is itself conducive to the opinion that such act was rather considered as manifesting the terms on which they are willing to bind the company, as negotiations preparatory to a conclusive agreement, than as a contract obligatory on both. * * * The act of incorporation is to them an enabling act. It gives them all the power they possess. It enables them to contract, and, when it prescribes a mode of contracting, they must observe that mode, or the instrument no more creates a contract than if the body had never been incorporated."

This last paragraph is quoted and approved by the supreme court in the recent case of *Merrill* v. *Monticello,* 138 U. S. 687, 11 Sup. Ct. Rep. 441. In the case of *Bank* v. *Earle,* 13 Pet. 519, TANEY, C. J., in speaking of what acts a corporation may perform, said: "And those acts must be done by such officers and agents, in such manner as the charter authorizes." In considering these cases, the conclusion would be reached that, where the officers of a corporation had not proceeded in the manner provided by law, their acts would be void. But there appears to have been drawn a distinction between cases where the corporation has no power to act and those where it has such power, but fails to perform the acts in question in the mode or manner provided by law. In the former the acts are void; in the latter, voidable. In the case of *Zabriskie* v. *Railroad Co.,* 23 How. 381, after citing the case of *Bargate* v. *Shortridge,* 5 H. L. Cas. 297, (decided in the house of lords, England,) where certain directors of a company had not observed the precautions required in entering into a contract, and sought to have the same subsequently declared void for the lack of those precautions, wherein it was held that, after having abided by the contract for several years, they should be estopped from setting up these defects in entering into the contract, the supreme court said:

"This principle does not impugn the doctrine that a corporation cannot vary from the objects of its creation, and that persons dealing with a company must take notice of whatever is contained in the law of their organization. This doctrine has been constantly affirmed in this court, and has been ingrafted upon the common law of Ohio. But the principle includes those cases in which a corporation acts within the range of its general authority, but fails to comply with some formality or regulation which it should not have neglected, but which it has chosen to disregard."

In the case of *Hervey* v. *Railway Co.,* 28 Fed. Rep. 169, Justice HARLAN, sitting as circuit justice, said:

"The objection under consideration can have no application to any one of the sectional mortgages, except that executed by the Paris & Terre Haute Railroad Company, which was organized after the passage of the act of 1872; but it cannot avail the parties making it for several reasons, one of which is that, as the Paris & Terre Haute Railroad Company admits the execution and delivery of the mortgage, it must, as between the company and its creditors, be deemed a valid instrument. The provision of the act of 1872, making the assent of a given number of stockholders essential to the validity of a mortgage, is primarily, if not exclusively, for the benefit of stockholders. If it be

conceded that stockholders of a railroad corporation, formed under the act of 1872, could, as against *bona fide* holders of bonds secured by a mortgage executed by such corporation, defeat a mortgage not executed with the express assent of the requisite number of stockholders, it does not follow that creditors of the corporation could raise any such question."

In this case it appeared that a statute of Illinois provided that the assent of two thirds in amount of the stock of the corporation, expressed in a prescribed mode, was essential to the validity of a railroad mortgage. In the case of *Wood* v. *Water Works Co.*, 44 Fed. Rep. 147, it was held that only stockholders could complain of a transaction *ultra vires*. In the case of *Beecher* v. *Rolling-Mill Co.*, 45 Mich. 103, 7 N. W. Rep. 695, Justice COOLEY, in delivering the opinion of the court, said:

"Courts often speak of acts and contracts as void when they mean no more than that some party concerned has a right to avoid them. * * * If it is apparent that an act is prohibited and declared void on grounds of general policy, we must suppose the legislative intent to be that it shall be void to all intents; while, if the manifest intent is to give protection to determinate individuals who are *sui juris*, the purpose is sufficiently accomplished if they are given the liberty of avoiding it."

In this case it was necessary to interpret a statute of Michigan which provided—

"That no alienation, diversion, sale, or mortgage of any part of the mine, works, real estate, or franchise of any corporation mentioned in the first section of this act should have any force or effect, or pass any title thereto or interest therein, unless expressly authorized by the vote of three-fifths in interest of the entire stock of said company, actually present or legally represented at some meeting of stockholders called and notified."

The notice required by statute for the meeting of such stockholders was as follows:

"No meeting of stockholders shall be held to be legal or valid, or the proceedings thereof of any force or effect, unless the directors or other parties or officers calling the same shall cause a notice of the time, place, and object of holding the same to be published two weeks for any annual meeting, and four weeks for any special meeting, previous thereto, in some newspaper published in the county."

The notice published in this case did not fully apprise the stockholders of the object of the meeting, and yet the court held that the mortgage executed in pursuance of a resolution of a stockholders' meeting, so called, was only voidable by the stockholders or corporation, and not by strangers to the same.

In the case of *Ditch Co.* v. *Zellerbach*, 37 Cal. 543, Justice SAWYER elaborately discussed the subject of *ultra vires* as applied to corporations. He said:

"The term '*ultra vires*,' whether with strict propriety or not, is also used in different senses. An act is said to be *ultra vires* when it is not within the scope of the powers of the corporation to perform it under any circumstances or for any purpose. An act is also sometimes said to be *ultra vires* with reference to the right of certain parties, when the corporation is not authorized

to perform it without their consent; or with reference to some specific purpose, when it is not authorized to perform it for that purpose, although fully within the scope of the general powers of the corporation, with the consent of the parties interested, or for some other purpose; and the rights of strangers dealing with corporations may vary according as the act is *ultra vires* in one or the other of these senses. All these distinctions must be constantly borne in mind in considering the question arising out of dealings with a corporation. When an act is *ultra vires*, in the first sense mentioned, it is generally, if not always, void *in toto*, and the corporation may avail itself of the plea; but when it is *ultra vires* in the second sense, the right of the corporation to avail itself of the plea will depend upon the circumstances of the case."

Morawetz on Corporations (section 675) expresses this as the rule under statutes similar to the one under consideration:

"Provisions in a charter or general incorporation law, requiring certain formalities to be observed in the corporate transactions, are not, as a rule, intended to have the force of imperative laws. Such provisions will be treated merely as directions, imposed for the benefit of the shareholders, unless a contrary intention is indicated by the legislature. Thus, a provision in the law or charter requiring a vote of the stockholders of a corporation to be taken in a particular form before the corporation shall be authorized to enter into certain engagements would constitute a limitation upon the powers of the corporate agents, and of the majority, but would not render an informal engagement void on the ground of illegality. If the shareholders should unanimously acquiesce in a disregard of such a provision placed in the charter for their benefit, the company cannot escape responsibility for the acts of its agents upon the ground that they have failed to comply with the prescribed forms. A corporation whose charter requires its contracts to be executed in a certain form may, by its acquiescence, become liable upon contracts made by its agents in another form. If the charter requires the assent of the shareholders by resolution or otherwise, their acquiescence in a contract made without obtaining a resolution will cure the defect."

I think, in the light of these decisions, the doctrine in *Head* v. *Insurance Co.*, *supra*, and that of *Bank* v. *Earle*, *supra*, must be held to have in some extent been modified; and that the doctrine is that where a contract is within the power of a corporation to perform, but its agents have not followed the mode prescribed, the contract must be considered voidable only, and not void. There is no doubt but that the Argenta Company had the power to mortgage the property in question, but the provisions of the statute prohibited the trustees of the company from doing so without first, in a certain manner, having obtained the consent of two thirds of its stockholders. This, it will be observed, was not a prohibition upon the corporation, but upon its agents. I am led to think that such a contract as the one under consideration must be considered as a voidable contract, and not a void *in toto* contract *ab initio*, for the reason that a contract of a corporation void *ab initio* as *ultra vires* cannot be ratified by acquiescence. "An act which is in excess of the charter of a corporation involves an unauthorized exercise of corporate power on the part of the company; and this objection cannot be obviated by any subsequent ratification, either by the agents or by the shareholders." Mor. Priv. Corp. § 619.

In speaking of a contract which had been entered into by a corporation, and which was *ultra vires*, the supreme court in the case of *Pennsylvania R. Co.* v. *St. Louis, etc., R. R. Co., supra,* said:

"But we understand the rule in such cases to stand upon the broad ground that the contract itself is void, and that neither what has been done under it nor the action of the court can infuse any vitality into it."

In the case of *Pittsburgh, C. & St. L. Ry. Co.* v. *Keokuk & H. Bridge Co., supra,* the supreme court again, in speaking of a contract which was beyond the power conferred by its charter, said, upon a point urged that the corporation was estopped because it had received benefits under the contract:

"According to many recent opinions of this court, a contract made by a corporation which is unlawful and void, because beyond the scope of its corporate powers, does not, by being carried into execution, become lawful and valid; but the proper remedy of the party aggrieved is by disaffirming the contract, and suing to recover, as on a *quantum meruit,* the value of what the defendant has actually received the benefit of."

There is no purpose expressed in the decisions to reverse that in the case of *Zabriskie* v. *Railroad Co., supra,* yet I do not see how they can be reconciled in any other way than that the contracts in the above cases were considered void, and the contracts in the last case voidable, Cook, Stocks, says, (section 682:)

"The courts are becoming more liberal, and many acts which fifty years ago would have been held to be *ultra vires* would now be held to be *intra vires.*"

Considering all of these authorities, I think the contract under consideration must be classed as a voidable, rather than as a void, contract. This is perhaps not in accordance with the views expressed by the learned supreme court of California in the cases of *McShane* v. *Carter,* 80 Cal. 310, 22 Pac. Rep. 178, and *Mining, etc., Co.,* v. *Kennedy,* 81 Cal. 356, 22 Pac. Rep. 679. In these cases I do not think the court fully considered the difference between contracts which are within the power of a corporation to perform, but where the forms and modes of entering into the contract have not been observed, and those where the corporation is without the power to make the contract. These cases cannot be fully reconciled, I think, with the case of *Ditch Co.* v. *Zellerbach, supra,* and which appears to be a very well-considered case. The contract being a voidable one, the question arises as to who can take advantage of any defect in entering into the same. The rule that is established by the statute requiring a meeting of the stockholders, etc., and the giving of their consent to the making of a mortgage, was for the benefit of the stockholders of the corporation executing the same. This was the view taken of a similar statute by Justice COOLEY and Justice HARLAN in the cases of *Beecher* v. *Rolling-Mill Co., supra,* and *Hervey* v. *Railway Co., supra.* The answer must be, then, that only the corporation, or the stockholders of the corporation, can take advantage of the contract under discussion. *Railroad Co.* v. *Ellerman,* 105 U. S. 166. This rule would exclude the right of any of the lienholders upon the

property embraced in the mortgage from raising the issue that the mortgage was not duly authorized by a vote of the stockholders at a meeting duly called. When a contract made by a corporation is only voidable, the corporation and stockholders can be estopped by their conduct from avoiding the same. *Kent* v. *Mining Co.*, 78 N. Y. 185, 186. In the case of *Railway Co.* v. *McCarthy*, 96 U. S. 258, the supreme court say:

"The doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong."

This doctrine is ably asserted in *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62. It is but proper to remark, however, that the decisions in the courts of New York, and that of the supreme court, upon the doctrine of *ultra vires*, are not always in harmony. The courts of New York generally follow the rule expressed by COMSTOCK, J., in *Bissell* v. *Railroad Co.*, 22 N. Y. 259, while the views expressed by SELDEN, J., in that case are more in accordance with those which have been maintained in the federal courts; yet upon this point the courts of that state and the supreme court seem to have united. It is difficult to see upon what principle a contract, which is void as in violation of public policy, as an act of a corporation is decided to be in *Pittsburgh, C. & St. L. Ry. Co.* v. *Keokuk & H. Bridge Co.*, *supra*, and which is not authorized by its charter or the law under which it is organized, can be maintained, because it might work a wrong or injustice. But this court feels bound by the rule expressed in *Railway Co.* v. *McCarthy*, and in accordance with it would have to hold that even the corporation and stockholders in this case would be estopped from asserting that the mortgage was void, although it might be held that it was beyond the power of the corporation to execute the same. But holding, as I do, that the mortgage was only a voidable contract, I have no difficulty in maintaining that the corporation and stockholders in this case would be estopped from denying its validity. The bonds sued on in this case were the consideration for the property embraced in the mortgage; neither the corporation nor the stockholders have ever expressed any desire to disaffirm that contract. The contract was entered into with the knowledge of the stockholders; the corporation have held and enjoyed the property so obtained; hence it would be a wrong to allow the corporation to disaffirm this mortgage, and, if neither the stockholders nor the corporation could now object to this mortgage, much less could the creditors of the Argenta Company object to the validity thereof. For the reasons assigned the demurrer is overruled.