WILLIAMS v. GOLD HILL MIN. CO. et al.

(Circuit Court, N. D. California. August 28, 1899.)

No. 12,531.

1. FOREIGN CORPORATIONS—SUBJECTION TO POLICY AND LAWS OF STATE.
    The right of a foreign corporation to engage in business in another state depends upon the comity of that state, and this comity is again limited by the public policy of the state, which may be inferred from its general attitude with regard to such corporations, or may be positively declared by statute.

2. MORTGAGE OF MINING PROPERTY IN CALIFORNIA.
    The state of California having declared its public policy by its constitution (article 12, § 15), which provides that "no corporation organized outside the limits of this state shall be allowed to transact business in this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state," and having provided by statute (St. 1880, p. 131), applicable by its terms to all mining corporations, that "it shall not be lawful for the directors of any mining corporation to sell, lease, mortgage or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation * * * unless such act be ratified by the holders of at least two-thirds of the capital stock of such corporation," and prescribed the manner in which such ratification must be shown, a corporation of another state, holding mining ground in California, is governed as to its conveyance or incumbrance by such statute, and a mortgage thereon, not ratified by its stockholders in the manner prescribed, is void.

3. FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.
    The decisions of the supreme court of California holding that judgment creditors of a mining corporation may question the validity of a mortgage given by the corporation on the ground that it was not ratified by the stockholders, as required by the state statute, do not relate to any question of commercial or general law, but are local in their effect, and are binding on a federal court.[1]

---

[1] As to state laws as rules of decision in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71, and, supplementary thereto, note to Hill v. Hite, 29 C. C. A. 553.

This is a suit to foreclose a mortgage given by a mining corporation on its mining property. The answering defendants are judgment creditors of the mortgagor. On final hearing.

Thomas S. Ford, C. Walter Artz, and E. J. McCutchen, for complainant.

J. M. Walling, for respondents.

MORROW, Circuit Judge. This is an action to foreclose a mortgage upon certain mining property situated in Nevada county, in this state. The mortgage was executed by the Gold Hill Mining Company on July 1, 1890, and conveyed the property mortgaged to G. Livingston Morse, of the city of New York, as trustee, to secure the payment of 100 bonds of $500 each, making $50,000 in all, payable at five years from date, with interest, payable semiannually, at the rate of 10 per cent. per annum. The respondents George C. Gaylord, Charles E. Maddrell, and Dwight T. Rolfe are judgment creditors of the respondent corporation. It is alleged in the bill that a default has been made by the respondent the Gold Hill Mining Company in the payment of the principal and interest of the bonds, and thereby default has occurred in the performance of the conditions of the mortgage. It is alleged that the persons or parties other than said mining company named as respondents in the bill of complaint have or claim to have some interest in or lien upon the premises covered by the mortgage, which interest or lien, if any, accrued subsequently to the lien of said mortgage, and is subject and subordinate thereto. The respondent the Gold Hill Mining Company has been served with a subpœna, and has defaulted. The respondents Gaylord, Maddrell, and Rolfe have appeared and answered the bill. The respondent Gaylord denies that the Gold Hill Mining Company was authorized to issue the bonds, or to execute the mortgage; alleges that at the date of said mortgage and bonds respondent corporation had its principal place of business in the city of New York, and that said bonds and mortgage are payable in the state of New York; that, according to the by-laws of said corporation, no person was, on July 1, 1890, eligible for election as a director thereof, unless he was a bona fide owner of 100 shares of capital stock in the company at the time of his election; alleges that none of the parties acting as directors at the date of the mortgage and bonds were the owners of such shares; that by the provisions of the laws of West Virginia (Code, c. 53, § 49) a director of a corporation must be a stockholder in the corporation; denies that the said corporation had any board of directors at the date of the adoption of the resolution authorizing the execution of the mortgage and bonds mentioned in the bill; that there were any stockholders or any directors of said corporation, or any persons authorized to vote for directors, or persons authorized to represent said corporation at the date of the alleged authorization of the said bonds and mortgage; alleges that the said corporation was not indebted at the date of said mortgage and bonds, but that the mortgage and bonds were attempted to be authorized and executed solely for the benefit of persons who pretended to represent said corporation as stockholders

and directors; that no consideration had been received by said corporation from any of the persons in whose interests said mortgage and bonds were issued; that the execution and delivery of said mortgage and bonds were authorized, if at all, only by the votes of pretended stockholders of said corporation, each of whom was directly, personally, and financially interested therein, and received the full benefit thereof, and hence said mortgage and bonds are fraudulent and void; alleges that the respondent corporation is organized for working the mining claims described in the bill; that the mortgage or trust deed set out in the bill, and alleged to have been executed by said corporation, was not ratified by the holders of at least two-thirds of the capital stock of said corporation, as required by an act of the legislature of the state of California approved April 23, 1880, entitled "An act for the further protection of stockholders in mining companies"; alleges that M. J. Shoecraft and C. Littlefield, whose names appear signed to the mortgage or trust deed, were not respectively president and secretary of the said corporation at the time of the execution of said mortgage; denies that said mortgage was executed by the president and secretary of said corporation, or either of them, and that the premises described in the bill were conveyed to G. Livingston Morse, trustee of the plaintiff, and that by virtue of said mortgage any lien was created upon said mining claim and premises in favor of said G. Livingston Morse; that said mortgage was authorized, made, executed, or delivered in conformity with law; denies that said 100 bonds have been disposed of to bona fide holders for value; that respondent mining company is indebted in the sum of $2,500 semiannual interest on account of said bonds for each or any half year since July 1, 1893, or prior thereto; that on July 1, 1895, the sum of $50,000 principal, or said principal sum and interest thereon, became due and payable; that respondents' claim has arisen subsequently to the lien of said mortgage, and is subject thereto; alleges that respondent Gaylord recorded in the superior court of the county of Nevada, state of California, a judgment for the sum of $12,439.26, together with $8 costs, which judgment has not been appealed from, modified, vacated, or set aside, but still remains in full force; that, subsequent to the entry of the above judgment, said respondent caused an execution to issue, and that said mining claims were sold by the sheriff on October 30, 1897; that at this sale respondent Gaylord, being the highest bidder, became the purchaser thereof for the sum of $13,331.82, whereupon the sheriff issued a certificate of sale to said respondent, which he now holds, no redemption having been made; that on October 29, 1897, in the superior court of the county of Nevada, state of California, respondent recovered a second judgment against said Gold Hill Mining Company for the sum of $4,504.87 and $6.75 costs, which judgment constitutes a lien upon the mining claims described in the bill, but which is wholly unsatisfied since respondent is the owner and holder of said claims; denies that said mortgage was given to secure the purchase price of the property; alleges that the property had been purchased and paid for before the execution of said mortgage or bonds; denies that any considerable portion of the money was used and appropriated as working capital

to start said mine. Respondent asks for a decree that complainant have no lien upon the premises described in the bill; that respondent's claims of lien are paramount to those of complainant; that the amount due and to become due on account of said bonds and interest be determined, and that respondent have such further relief as is agreeable to equity. Respondents Maddrell and Rolfe have filed a joint answer, in which the same allegations and denials are made as in the answer of Gaylord, except that said respondents allege that a judgment was recovered in the superior court of the county of Nevada, state of California, by Charles Maddrell, against said Gold Hill Mining Company, for the sum of $603.55 and costs amounting to $5.90; that upon an order of sale the property described in the bill was sold by the sheriff to satisfy said judgment, and at said sale respondents became the purchasers of the property for the sum of $675.25, whereupon the sheriff issued to them a certificate of sale, and respondents are now the owners and holders of said certificate of sale, no redemption having been made. The prayer of these respondents is identical with that of the respondent Gaylord.

The Gold Hill Mining Company is a corporation organized under the laws of West Virginia on June 23, 1890, and consequently a corporation foreign to the state of California. The recognition of its existence, therefore, and the enforcement of its contracts in this state, depend upon the comity and consent of the state. Corporations chartered by one sovereignty have no authority to exercise their franchises in another, except as the latter shall permit; but by comity they are suffered to do so where it will not contravene any principle of local policy, or any general statute. As was said in Runyan v. Coster's Lessee, 14 Pet. 122:

"Every power which a corporation exercises in another state depends for its validity upon the laws of the sovereignty in which it is exercised, and a corporation can make no valid contract without the sanction, express or implied, of such sovereignty."

In the case of Paul v. Virginia, 8 Wall. 168, Justice Field, delivering the opinion of the court, said:

"The corporation, being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in Bank v. Earle, 13 Pet. 588, 'it must dwell in the place of its creation, and cannot migrate to another sovereignty.' The recognition of its existence even by other states, and the enforcement of its contracts made therein, depend purely upon the comity of those states,—a comity which is never extended where the existence of the corporation or the exercise of its powers are prejudicial to their interests, or repugnant to their policy. Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely. They may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

The constitution of the state of California declares the public policy of this state with regard to foreign corporations in article 12, § 15, as follows:

"No corporation organized outside the limits of this state shall be allowed to transact business in this state on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

Respondents deny the validity of the mortgage set up in the bill, as it was not executed in accordance with the provisions of an act of the legislature of the state of California approved April 23, 1880, and entitled "An act for the further protection of stockholders in mining companies," section 1 of which reads:

"It shall not be lawful for the directors of any mining corporation to sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation, nor to purchase or obtain in any way any additional mining ground unless such act be ratified by the holders of at least two-thirds of the capital stock of such corporation. Such ratification may be made either in writing, signed and acknowledged by such stockholders, or by resolution duly passed at a stockholders' meeting called for that purpose." St. Cal. 1880, p. 131.

The mortgage in question was not ratified by the stockholders, as provided in the statute quoted.

In the case of McShane v. Carter, 80 Cal. 310, 22 Pac. 178, the supreme court of this state said, with regard to the section above quoted:

"We think that the provision of said act goes to the power or authority of the directors. It cannot be construed to relate merely to their personal liability, for no penalty is imposed upon them, and to so construe it would be to practically nullify the act. In our opinion, the directors of mining corporations have no power or authority to convey the mining ground without the consent of the holders of two-thirds of the stock given, as prescribed by the act; and it follows, without such consent, the title does not pass; and, if this be so. the question can be raised by any one who connects himself with the title of the corporation which owned the property, as well as by the stockholders thereof."

To the same effect is Milling Co. v. Kennedy, 81 Cal. 356, 22 Pac. 679.

The terms of the act and the decisions of the supreme court plainly declare the law with regard to the mortgaging of mining property by a corporation in this state under the statutes of 1880. On April 23, 1880, another statute was approved, entitled "An act amendatory of an act entitled 'An act for the better protection of the stockholders in corporations formed under the laws of the state of California, for the purpose of carrying on and conducting the business of mining,' approved March 30, 1874." St. Cal. 1880, p. 134. Section 1 of this statute reads:

"Section 1. It shall be the duty of the secretary of every corporation formed under the laws of this state for the purpose of mining to keep a complete set of books," etc.

Then follow certain provisions regarding the balance sheet, the duty of the superintendent, etc. In the case of Miles v. Woodward, 115 Cal. 308, 46 Pac. 1076, plaintiff contended that the act above referred to was unconstitutional, because it allowed corporations organized beyond the state limits to transact business within the state upon more favorable conditions than similar corporations organized under the laws of this state. The supreme court, through Justice Henshaw, said:

"It is first contended that the act in question is unconstitutional, for the reason that it operates only upon domestic corporations, and thereby allows foreign corporations to transact business within this state upon more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state, in violation of section 15, art. 12, of the constitution. But the act, as its title declares, is an act designed for the 'better protection of the stockholders in corporations formed under the laws of the state of California for the purpose of carrying on and conducting the business of mining.' The statute is, in its nature, both penal and remedial. It is directed to the internal affairs of the corporation, and not to its outside dealings, or to the conduct of its business. The constitution was not designed to limit the powers of the legislature when dealing with the organization and government of corporations which are created by its own will and act. Over such corporations it has and may exercise full powers of control. Over the organization and internal government of foreign corporations it has no such powers. The laws of the state do not have extraterritorial force. It would be meaningless for this state to try to legislate upon the internal affairs of such foreign corporations, and it has not attempted to do so. The law is designed to protect stockholders of domestic corporations, and to that end has declared that the directors of those corporations, the conduct of whose internal affairs is subject to the control of the legislature, shall do specific acts, under a prescribed penalty for their failure and refusal. It does not, therefore, relate to the business of the corporation, nor impose burdens or restrictions upon domestic corporations in the conduct of their business, from which foreign corporations are relieved, but pertains as exclusively to corporate management as do the Code provisions relating to the organization and conduct of savings and loan corporations, and all corporations whose internal affairs are more or less carefully regulated by the laws of the state."

Complainant contends that the acts (St. Cal. 1880, p. 134, and Id. p. 131) constitute but one statute, relating only to domestic corporations, and that, consequently, a foreign corporation, such as the respondent corporation, is not bound by it. But an examination of the statutes in question by no means supports complainant's position. In the first place, the titles show very clearly the scope of the two acts, which were both passed upon the same day. The title of St. Cal. 1880, p. 131, is "An act for the further protection of stockholders in mining companies"; that of Id. p. 134, is "An act amendatory of an act entitled 'An act for the better protection of stockholders and corporations formed under the laws of the state of California, for the purpose of carrying on and conducting the business of mining,' approved March 30, 1874." The general terms of the first of these titles, as contrasted with the specific declarations comprised in the second, must be apparent at first sight. The one is an act for the protection of stockholders in mining corporations, the other amends an act for the better protection of stockholders in mining corporations formed under the laws of California. A comparison of the text of these two statutes goes still further to show the distinctive features which mark them as separate statutes dealing with different subjects. St. Cal. 1880, p. 131, explicitly enjoins, as quoted above, that the directors of a mining corporation shall not sell, lease, mortgage, or otherwise dispose of mining ground without the ratification of two-thirds of the stockholders, which ratification must be evidenced by writing, or by a resolution of a meeting of stockholders called for that purpose. It prescribes further that the stock shall be in the name of the real owner or trustee, and directs when the books are to be closed, and how the stock is to be voted. Id. p. 134, lays down explicit directions for

the keeping of books, the making of a balance sheet, the duty of the superintendent, and the examination of grounds, and imposes certain penalties. The act of which this act is an amendment (St. Cal. 1873–74, p. 866) deals precisely with these same matters, and refers evidently and exclusively to domestic corporations. A comparison of the two statutes passed on April 23, 1880, leads, therefore, to the following conclusion: The first act (St. Cal. 1880, p. 131) applies to all mining corporations doing business in this state, and regulates the actions of such corporations in selling, leasing, mortgaging, or otherwise disposing of mining ground owned by corporations in this state. The second act (Id. p. 134) applies only to domestic corporations in the conduct of their internal affairs. The former is a general law, affecting all mining corporations transacting business in this state, foreign corporations equally with domestic, and is in pursuance of the requirements of the constitution of the state expressly providing that foreign corporations shall not transact their business at an advantage over domestic corporations. Against this construction of the first statute the complainant contends that all the powers possessed by the mining company as a corporation, and all its relations with its stockholders, depend upon the sovereignty creating the corporation, and that this sovereignty alone has visitatorial powers. Thus, while the state of California has full power to regulate the form of instruments creating a lien, it has no power to dictate in what manner corporate action shall be evidenced, or to interfere with the internal management of a foreign corporation in any way. Since there is no express provision that foreign corporations must take certain prescribed corporate action, it cannot be assumed that the legislature intended any such action to be taken. In support of this contention counsel cite Saltmarsh v. Spaulding, 147 Mass. 224, 17 N. E. 316. In this case a mortgage deed had been made by a foreign corporation organized in New Hampshire of land in Massachusetts. This corporation was authorized, under the laws of New Hampshire, to make contracts to purchase and convey necessary real estate, and to adopt by-laws regulating the powers and duties of its officers. The Massachusetts statute required that a vote of stockholders was necessary to a conveyance of real estate by a corporation. Pub. St. Mass. c. 106, § 23. The court held that this statute did not apply to foreign corporations, and Devens, J., in the course of his opinion, said:

"While the general principle undoubtedly is that the law of the place where real property is situate exclusively governs as to the title of parties therein, the disposition and mode of transfer thereof, and the solemnity attending such transfers, and while we do not doubt that it would be possible to provide by legislation that foreign corporations permitted to own real property situate in this state should only transfer the same by authority of its stockholders, no such provision has been made. Atty. Gen. v. Mining Co., 99 Mass. 148. While they must comply in their forms of conveyance with those here required, they derive their authority to make them from the rules imposed upon them by the states where they are created."

In this state, however, the procedure necessary to the validity of a mortgage made by a mining corporation has been expressly declared by statute, and the intention of the legislature that such pro-

cedure should be incumbent upon all mining corporations doing business in this state is further evidenced by the fact that another statute upon another subject was passed upon the same day, referring specifically to domestic corporations.

In the case of Vanderpoel v. Gorman, 140 N. Y. 563, 35 N. E. 932, cited by complainant's counsel, it was held that an assignment for the benefit of creditors, made by an insolvent foreign corporation, valid under the law of its domicile, will be recognized as valid in New York, and that the statute of New York (section 48, c. 564, Laws 1890) prohibiting an assignment by a corporation in contemplation of insolvency does not apply to foreign corporations. Counsel quote a portion of the opinion of Peckham, J., on this case. The learned judge discusses at length the reason why foreign and domestic corporations do not necessarily stand upon the same footing in the matter of assignments, but running through his opinion are expressions such as the following:

"As the prohibition is not contained in any statute of the state, we are unable to discover any public policy of the state which would stand in lieu of a positive statute, and prohibit our recognition of the validity of this transfer." And again: "It is thus seen that there are differences of a marked character between a domestic and a foreign corporation in relation to this subject. The differences are so marked that the statute regarding domestic corporations can furnish no proof as to the existence of a public policy which, in the case of foreign corporations, should stand in the place of, and be equivalent to, that statute."

The constitution of this state, however, does furnish precisely such proof of the existence of a public policy as the learned judge declares himself unable to discover in the statutes of New York applicable to the case under his consideration; and that public policy is declared to be that, in this state, there shall be no discrimination in favor of a foreign corporation. In the case of Demarest v. Flack, 128 N. Y. 205, 28 N. E. 645, cited by complainant, Peckham, J., dealt with the question as to whether the defendant in that action was entitled to recognition as a corporation in the state of New York. Defendant had incorporated under the laws of West Virginia. The corporators were citizens of New York, and they had formed a corporation for the sole purpose of doing business in the state of New York, and it was contended by complainant that therefore, and on that account, they were not entitled to be recognized as forming a valid corporation in the state of New York. This contention was disallowed. But this is by no means the question here. If the corporation under consideration has been duly organized according to the laws of West Virginia, it will be recognized as a valid corporation in this state. But the point under discussion is that the respondent corporation,—admitting that it is a duly-organized foreign corporation,—in the matter of executing a valid mortgage of mining property, is governed and controlled by the law laid down by the statutes of the state of California for the mortgaging of such mining property by a corporation. In the course of this opinion occur the following with regard to foreign corporations:

"When they come to our state to do business, they must conform to our laws relating to foreign corporations, and comply with the terms laid down by us

as conditions of allowing them to transact business here." And again: "The supervision of a foreign corporation by this state may easily be exercised by imposing terms as a condition of permitting it to do business here."

Another case cited by complainant in the same connection is American Waterworks Co. v. Farmers' Loan & Trust Co., 20 C. C. A. 133, 73 Fed. 956. This was an appeal from the circuit court of the United States for the district of Nebraska. The suit out of which the appeal arose was brought by the Farmers' Loan & Trust Company, the appellee, to foreclose an original and a supplemental mortgage on certain waterworks situated in the city of Omaha, Neb., which were given to secure the payment of an issue of negotiable bonds to the amount of four millions of dollars that were executed by the American Waterworks Company, a corporation of the state of Illinois. Thayer, J., in delivering the opinion of the court, said:

"The powers thus conferred on the Illinois company by the laws of Illinois it carried with it into the state of Nebraska, and was privileged to there exercise, unless it was prohibited so doing by the provisions of some local law or the public policy of that state. Cowell v. Springs Co., 100 U. S. 55, 59; Academy v. Sullivan, 116 Ill. 375, 6 N. E. 183. And no law of the state of Nebraska has been cited which, in our judgment, deprived the Illinois company of its right to exercise within the state of Nebraska its charter power 'to mortgage real estate by it owned and there situated."

In the present controversy, however, there is no question of the right of the respondent corporation to mortgage the mining property. The only question is, did the corporation comply with the requirements of the state laws regarding the procedure to be adopted by corporations in the mortgaging of mining property? The personnel and the internal management of foreign corporations are subject to the laws of the state under which they are organized, and by virtue of which they are entitled to exist as corporations. But when such foreign corporations come to do business in the state of California they are restrained by the public policy of the state from the enjoyment of privileges not participated in by the domestic corporations organized under and existing by virtue of the laws of this state. What are the formalities which attend the conveyance or the mortgaging of property by a mining corporation in this state under the act of 1880? They are detailed in the first section of that act, as it has been quoted above. The act of selling, leasing, mortgaging, or any other of the acts therein enumerated, must "be ratified by the holders of at least two-thirds of the capital stock of such corporation. Such ratification may be made either in writing, signed and acknowledged by such stockholders, or by resolution duly passed at a stockholders' meeting called for that purpose." Here the law distinctly lays down the mode of procedure to be followed by mining corporations. No exceptions are made, and the public policy of the state is plainly declared to be that foreign corporations shall enjoy no superiority over domestic, under the state laws.

In 2 Mor. Priv. Corp. § 965, we find:

"It is not necessary in all cases that a state should, by statute, expressly exclude foreign corporations, in order to indicate that they shall not be allowed to act within its jurisdiction. The will of the state may be implied from its general policy and legislation. Chief Justice Taney said: 'Whenever a state

sufficiently indicates that contracts which derive their validity from its comity are repugnant to its policy, or are considered injurious to its interests, the presumption in favor of its adoption can no longer be made.' Bank v. Earle, 13 Pet. 592. Accordingly it has been held that foreign corporations have no right, by the law of comity, to do acts within a state which are prohibited by the laws of that state to its own citizens, or corporations engaged in a similar business."

In the case of Falls v. Building Co., 97 Ala. 417, 13 South. 25, the court said:

"When a corporation of foreign creation not only attempts to enforce rights before our tribunals, but goes further, and actually performs corporate acts within our jurisdiction, it can claim no exceptional rights or privileges which may have been conferred by the law of its creation, if such enforcement involves a breach of our own public policy or statutory system. The legislature of one state cannot confer rights and authorize their exercise beyond its own boundaries, unless they be in harmony with the general policy of the state or country in which their exercise is attempted."

In Manufacturing Co. v. Wetzel (Tenn. Ch. App., Feb. 8, 1896) 35 S. W. 896, the Southern Mutual Building & Loan Association, a foreign corporation, held three mortgages or trust deeds which had been executed to it in Tennessee, and under which the trustee proposed to sell certain property. The bill asked for an injunction to prevent the trustee from selling the property in question, and that the trust deeds and the contracts thereunder be declared illegal and void, on the ground of noncompliance with statutory requirements regarding building and loan associations. One ground of demurrer to the bill claimed that "a contract made by a foreign corporation before it has complied with statutory prerequisites is not void, because the act does not expressly so declare." This ground of demurrer was disallowed.

In the case of Union v. Yount, 101 U. S. 352, Justice Harlan says:

"For, besides the admitted incapacity of a corporation of one state to exercise its powers in another state, except with the assent or permission, express or implied, of the latter, it is a principle 'as inviolable as it is fundamental and conservative that the right to hold land and the mode of acquiring title to land must depend altogether on the local law of the territorial sovereign,'"— in connection with which are cited Runyan v. Coster's Lessee, 14 Pet. 122, and Lathrop v. Bank, 8 Dana. 114.

See, also, Mortgage Co. v. Gross, 93 Ill. 483, 493; People v. Howard, 50 Mich. 239, 15 N. W. 101.

From a consideration of the law and the various authorities, it appears that the right of a foreign corporation to engage in business in another state depends upon the comity of that state, and that this comity again is limited by the public policy of the state, which public policy may be inferred from the general attitude of the state with regard to such corporations, or may be positively declared by statutory enactment. In the case in question the state has declared its public policy in the state constitution, and has prescribed by statute a certain mode of procedure to be followed by all mining corporations in the mortgaging of mining lands. It was the duty of the foreign corporation to comply with those requirements. It came into this state to do business. It should have done its business in accordance with the law of this state.

Complainant maintains that respondents, as judgment creditors, cannot question the authority of the corporate action authorizing the execution of the mortgage and the issue of the bonds, to which respondents reply that they do not question the issue of the bonds, but the lien of the mortgage, which lien, they maintain, is of no value for noncompliance with statutory requirements. It was held in the case of McShane v. Carter, 80 Cal. 310, 22 Pac. 178, cited above, that the "question [of title] can be raised by any one who connects himself with the title of the corporation which owned the property, as well as by the stockholders thereof." See, also, Milling Co. v. Kennedy, 81 Cal. 356, 22 Pac. 679. Complainant endeavors to meet these decisions of the supreme court of this state with the claim that the ruling of the state court in the above cases must be disregarded by the federal court on the grounds that this particular point does not involve the construction of a statute, but is a question of commercial law, and, such being the case, the court must follow the independent rulings of other federal tribunals. What is commercial law? In the case of Railroad Co. v. National Bank, 102 U. S. 14, 31, the supreme court said:

"It is a law not peculiar to one state or dependent upon local authority, but one arising out of the usages of the commercial world."

Mr. Justice Clifford, in a concurring opinion, on page 55, refers to Bouvier's definition of "Commercial Law," as follows:

"Commercial law is a phrase employed to denote the branch of the law which relates to the rights of property and the relations of persons engaged in commerce. Persons engaged in commercial adventures, wherever they may have their domicile, have business relations throughout the civilized world, from which it results that commercial law is less local and more international than any other system of law except the law of nations."

It appears to be clear that the parties to this action cannot be described as persons engaged in commercial adventures, in the sense in which that term is ordinarily employed.

In the case of Swift v. Tyson, 16 Pet. 1, Story, J., in delivering the opinion of the court, said, referring to the thirty-fourth section of the judiciary act of 1789 (1 Stat. 92):

"It never has been supposed by us that the section did apply, or was designed to apply, to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation; as, for example, to the construction of ordinary contracts or other written instruments, and especially to questions of general commercial law where the state tribunals are called upon to perform the like functions as ourselves,—that is, to ascertain, upon general reasoning and legal analogies, what is the true exposition of the contract or instrument, or what is the just rule furnished by the principles of commercial law to govern the case. And we have not now the slightest difficulty in holding that this section, upon its true intendment and construction, is strictly limited to local statutes and local usages of the character before stated, and does not extend to contracts and other instruments of a commercial nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence. * * * The law respecting negotiable instruments may be truly declared, in the language of Cicero, adopted by Lord Mansfield in Luke v. Lyde, 2 Burrows, 882, 887, to be in a great measure not the law of a single country, but of the commercial world. 'Non erit alia lex Romæ, alia Athenis, alia nunc, alia post hac, sed et apud gentes, et omni tempore, una eademque lex obtinebit.'"

It is evident that even with this liberal definition of commercial law complainant's argument in this regard cannot prevail. There is, on the contrary, every reason to consider this as a case in which the decisions of the state court carry the weight of authority. In cases which depend upon the statutes of a state, and particularly in such cases as relate to the title to land, the United States supreme court will adopt the construction of the state courts whenever it is possible to ascertain this construction. Polk v. Wendall, 9 Cranch, 87.

In Gardner v. Collins, 2 Pet. 58, the case depended upon the construction of the statute of descent of Rhode Island of 1822. The court said:

"If this question had been settled by any judicial decision in the states where the land lies, we should, upon the uniform principles adopted by this court, recognize that decision as a part of the local law."

See, also, Elmendorf v. Taylor, 10 Wheat. 152.

Again, in the case of Shelby v. Guy, 11 Wheat. 361, the court held:

"That the statute law of the states must furnish a rule of decision to this court as far as they comport with the constitution of the United States in all cases arising within the respective states, is a position that no one doubts. Nor is it questionable that a fixed and received construction of their respective statute laws in their own courts makes, in fact, a part of the statute law of the country, however we may doubt the propriety of that construction."

The decision, then, of the supreme court of this state must, for every reason, prevail in this case. The construction placed upon the statute in question by the state court becomes statute law, and this court can do nothing but accept it. The decisions in the cases of McShane v. Carter and Milling Co. v. Kennedy declare that respondents, as judgment creditors, have the right to question the validity of the mortgage in this case, and there is no merit in the contention of complainant that this right can be denied by this court. The mortgage being invalid by reason of the noncompliance of the directors of the respondent corporation with the statutory requirements of this state, it will not be necessary to consider the other objections relating to its execution and the organization of the respondent corporation. A decree will be entered in favor of the respondents, in accordance with this opinion.