Cunningham, Presiding Judge.
On April 27, 1908, plaintiff filed her bill in the dis-‘ trict court for the purpose of recovering from the Dens-low Coal and Land Company, a corporation, on three promissory notes, and to foreclose three mortgages given to secure said notes, each note being secured by a mortgage on different pieces of real estate. The complaint is in the ordinary form in such cases. Judgment went' for plaintiff. The Denslow Company was made the sole defendant. The Firestone Coal Company is the successor to the Denslow Company, the name having been changed during the month of October, 1908, some nine months after the Denslow Company had answered. The original transaction out of which the controversy arises consisted of the sale by appellee, hereinafter referred to, for convenience, as plaintiff, to the Denslow Company of a quarter section of coal land situate' in Weld county. At the time the sale of this land was being arranged for, an agreement, dated March 12, 1907, was entered into between the plaintiff and the promoters of the Denslow Company, which was then being organized, which agreement provided in substance that plaintiff was to give a deed to the Denslow Company in consideration of $24,000 to be paid to herself and one William McKissick, who is not shown by the record to be in any way related to the plaintiff, $15,000 to be paid to plaintiff and $9,000 to William McKissick, or to William McKissick as trustee. This agreement provided that the $15,000 which plaintiff was to receive should be paid in installments. We need not concern ourselves further about the $9,000 which was to be paid to William McKissick, trustee.
In order to secure the payments due plaintiff, it was provided that the' entire capital stock of the company *296 should be transferred by the company to Cole and Curtis (except one share to each of the other promoters to qualify them as directors), all of which stock was to be assigned in blank by the parties to whom it was issued, and these certificates of stock, together with the books, seal and other paraphernalia belonging to the company, placed in the hands of Thomas Keeley as escrow holder or trustee, portions of the stock to be released by Mrs. McKissick, or by said Keeley, from time to time as payments were made by the company upon the land. Time was made the essence of this agreement, and forfeiture of the sums paid provided for. The escrow holder, in the event of forfeiture or default by the corporation in making the payments on the land, was to deliver the certificates and all papers in his hands to plaintiff, and all previous payments were to be considered as liquidated damages. It was further provided in said agreement that in the event of forfeiture, and delivery of the stock and effects of the company by Keeley to plaintiff, “said company shall thenceforth cease to have any interest in said company or land aforesaid.” This agreement was never placed upon the county records, but the deed given by Mrs. McKissick to the company for the land was placed of record. The company failed to perform the conditions of the aforesaid agreement, after having made certain payments upon the land, and the balance of the stock in the hands of Keeley, which had not been released by him, was turned over to plaintiff, together with the books and seal of the company. Thereafter, after negotiations covering a considerable period, an agreement was reached between herself and the officers of the company actively in control thereof, whereby the three notes and mortgages here sued upon were executed by the officers of the company and delivered to plaintiff. Thereupon, she redelivered the certificates of stock and effects of the company to its officers. These three notes and mortgages all bear *297 'date September 12, 1907. The mortgages contained the following recitations: that the Denslow Coal and Land Company is justly indebted to Mrs. McKissick in the sum of $2,500 (each note being for that amount, the three notes aggregating $7,500), and each of the mortgages further recites that the company: “has good right, full power and lawful authority to grant, bargain and sell the same (meaning the land described in the mortgage) in manner and form aforesaid.” Each of the notes was signed, “The Denslow Coal and Land Company, George G. Dens-low, President, E. C. Curtis, Secretary,” and bore the seal of the company, and recited that they were sealed and delivered in the presence of G. K. Andrus, at that time the attorney for the company.
1. The first answer filed by the defendant company (the one filed before it changed its name from The Dens-low Land Company to the Firestone Coal Company) admits the execution of the notes and mortgages, and sets up other defenses not necessary for us to consider (a) because there was no proof whatever to support said defenses, (b) because the second answer filed by the company (after it had changed its name to the Firestone Coal Company) was the one upon which the case appears to have been tried, although the first answer was never withdrawn. The second answer of the company admits, ‘ ‘ that the three mortgages herein alleged as having been given to secure said promissory notes were. apparently given and executed by the said Denslow Coal and Land Company and recorded,” as alleged. The second answer charged by way of defense a conspiracy entered into between the plaintiff and'the original promoters of the company for the purpose of defrauding the stockholders of the company, and proposed purchasers of its stock. It appears that Curtis, one of ‘the promoters, went to Ohio and sold a considerable amount of this stock at par. (The second aswer was filed and the case defended by *298 these Ohio stockholders, or at their instigation.) The answer avers that Mrs. McKissick had full knowledge of Cnrtis’s transactions in Ohio, and the fraud which it is charged he perpetrated through-misrepresentations upon the Ohio purchasers of stock. It is sufficient to say that the evidence fails to support this allegation. It is probable that the indebtedness of the company to Mrs. McKissick was not disclosed by Curtis, or anyone else connected with the company, to the Ohio purchasers of stock; on the contrary, the record would indicate that they had been advised by Curtis that the company owned the Mrs. Mc-Kissick land, and that it had been fully paid for. But there is no evidence indicating that Mrs. McKissick had any knowledge whatever of these misrepresentations. Complaint is made that the agreement herinbefore referred to between Mrs. McKissick and the original promoters was never made a matter of record. It is sufficient on this point to say that Mrs. McKissick owed no duty to the company, or to the purchasers 'of stock in the company, which required her to record the agreement. The balance due from the company to Mrs. McKissick on the land was $7,500. It appears that long after this suit was brought by Mrs. McKissick, the company accepted a note from Curtis for $7,500. A resolution authorizing the company to accept this note reads as follows:
“Moved by J. W. Buchanan and seconded by C. S. Buchanan,, resolved that the stockholders in meeting assembled hereby agree to accept E. B. Curtis’s note in the sum of $7,500 in liquidation of the balance due on the land. The question being put, all present voted aye.”
The Buchanans weré two of the Ohio purchasers of stock, and appear to have largely represented the company and the other eastern stockholders, after its change of name. J. W. Buchanan attempted to explain this resolution and the acceptance of Curtis’s note. He testified that this note had no connection whatever with the amount *299 which, the plaintiff claims in this action. His son, Clarence Buchanan, who was present at the stockholders’ meeting and seconded the motion or resolution authorizing the taking of Curtis’s note, testified as follows concerning this meeting and said resolution:
‘ ‘ Q. Curtis at this same meeting agreed to -pay to the company $7,500 on account of this McKissick claim, didn’t he ? A. He did. ’ ’
No other witness present at that meeting, although it was a stockholders’ meeting, was called to testify on this subject. Mr. Curtis himself was present at the trial and frequently on the stand, but the defendant made no attempt to show by him that the $7,500 note so given by him to the company nine months after this suit was brought, was not given in satisfaction of the balance which the company owed Mrs. McKissick, and which is represented by the notes here in suit. Under these circumstances, the trial court was • certainly warranted in finding that the company, by direction of its stockholders, had voluntarily accepted the Curtis note for the amount which Mrs. McKissick was suing for, and hence whatever irregularity (hereinafter to be referred to) there may have been in the transaction culminating in the notes and mortgages here sued upon, the same had been waived and the transaction ratified by the company pursuant to a resolution unanimously passed at a stockholders’ meeting apparently regularly called. .If so, it being undisputed by the evidence that there was a balance due Mrs. McKissick of $7,500, that is, that she had not received the full purchase price of the land by that amount, then the company would unquestionably be liable on the notes, or estopped from denying its liability, which comes to' the same thing.
2. The'company, in the second answer filed by it, pleads want of authority in the officers to execute the notes and mortgages in question. . This defense is predi *300 cated upon section 865, Bevised Statutes of 1908, which provides that:
“The board of directors or trustees of a mining or manufacturing corporation shall not have power to encumber the mines or plant of such corporation, or the principal machinery incident to the production from such mine or plant, until the question shall have been submitted at a proper or regular meeting of the stockholders, and a majority of all the shares of stock shall have been voted in favor of such proposition; and any mortgaging or incumbering of such property without such consent shall be absolutely void, and the vote upon such proposition shall be entered upon the minutes of the corporation.”
In the original opinion handed down in this case, we ruled that by the articles of incorporation of the defendant company it was not entitled to invoke the protection of the section of the statute just quoted, for the reason that it was engaged in many other ventures than that of mining,' and that a company engaged in various occupations, even though engaged in mining, was not a mining company in the contemplation of section 865. We now withdraw so much of our original opinion as pertains to this feature of the case, and we purposely express no opinion thereon.-
In January of the present year the circuit court of appeals of the eighth circuit had under consideration section 865 of our statute, and in an elaborate and well reasoned opinion, supported by a vast array of authorities, state and federal, it is expressly ruled that the defense here interposed, i. e., want of authority in the directors to execute a mortgage without a vote of the stockholders of the corporation, could not be raised by the corporation, but that the stockholders, and they alone, had the right to assert this defense. We refer to the case of Westerlund v. Black Bear Mining Company, 203 Fed., 599. Judge *301 Sanborn, speaking for the court, after a most careful consideration of tbe authorities, including the decisions of our own state, to which we shall presently refer, at page 613, uses this language: ’
“But a corporation which has executed and accepted the benefits of a contract within the scope of its powers, that is neither wrong in itself nor against public policy, and that is defective only because in its execution the corporation has failed to comply with some legal requirement enacted for the sole benefit of third persons, is es-topped to assail it, and the beneficiaries of the requirement alone may avoid it. Hence the stockholders of this corporation, and they alone, have the right to avoid this lease, because they alone had any interest in a compliance with the legal requirement that they should assent to its execution.’.’
No good purpose can be subserved by further quoting from the opinion in the ’We.sterlund case, since it is readily accessible to the parties here concerned and to the profession as well. We might observe, however, that in Carlsbad Water Company v. New, 33 Colo., 389, 81 Pac., 34, decided in 1905, it appears that our supreme court ruled that it is competent for thé trustee in bankruptcy-of a corporation to invoke the provisions of the statute here under consideration. But it does not appear from the opinion that the point raised by Judge Sanborn in the Westerlund case, viz.: that only the stockholders of the corporation, for whose benefit the section of the statute was passed, could invoke its. provisions, was in any manner called to the attention of or considered by our supreme court in connection with the Carlsbad Water Company case. We have examined the briefs filed in the Carlsbad case, both the original briefs and those filed on rehearing, without being able to discover that this matter was even mooted in that case. Judge Sanborn, considering the Carlsbad case, calls attention to the fact that it is *302 the only one that has come to his attention in which it has been held that a • corporation has the right to challenge its otherwise valid transactions on the ground that they were made without the required consent of its stockholders. And Judge Sanborn further calls attention to the fact that our supreme court in making this ruling indulged in no reasoning to support it, but relied upon McShane v. Carter, 80 Calif., 310, 22 Pac., 178, and Perkins Mining, Etc., Co. v. Kennedy, 81 Calif., 356, 22 Pac., 679, both of which were, in 1911, overruled by the California supreme court in McKee v. Title Insurance and Trust Co., 159 Calif., 206, 113 Pac., 140, after the error in the two earlier California cases had been pointed out by the federal court in Campbell v. Argenta Gold & Silver M. Co., 51 Fed., 1. The answer in this case was filed by the defendant corporation, and in its name; no attempt appears to have been made by the stockholders to avail themselves of the provisions of our statute hereinabove quoted, and therefore, we must rule that the provisions of section 865, Revised Statutes, cannot avail the defendant in this ease.
3. We have re-examined the record, and are not convinced that the board of directors in this case (assuming that they were without authority from the stockholders and that such authority was a condition precedent) included within the mortgages here under consideration, “the mines or plant-of such corporation or the principal machinery incident to the production from such mine or plant.” As Judge Sanborn, in the Westerlund case, supra, observes, “it was the power to hinder or prevent the production by the corporation from its mine or plant by incumbering, either-the mine or the plant, or of the principal machinery incident to the production, that was by our statute clearly and expressly withheld from the board of directors and officers of the corporation in the absence of an approving vote of the stockholders.” The *303 evidence in the instant case tends to show that some of the land that had been platted by appellant as town lots, and which was included in these mortgages, had been pierced by a tnnnel which appellant had run from the main shaft of its mine, but there was no evidence tending to show that coal had been discovered in said tunnel, or upon said lots, or that the work of mining was being prosecuted therein or thereon, and it is clear that no part of the machinery or plant of appellant was located upon the lots included in the mortgages. Hence it does not appear that the conveyance of these lots by the board of directors tended to hinder or prevent the production of coal by appellant, and it affirmatively appears from the record that the mortgages can in no 'manner interfere with the corporation’s right to operate its principal machinery incident to the production of coal.
4. Objection is made by defendant to the allowance of attorney’s fees by the court. All the notes sued upon, and the mortgages securing them, provide for an attorney’s fee in case of foreclosure, and the amount thereof was stipulated by the parties in these various instruments, and the amount so stipulated was allowed by the court. It has been determined in Byers v. Investment co., 10 Colo. App., 78, 50 Pac., 368, that an attorney’s fee thus stipulated may be collected and is properly included in a judgment or decree rendered on a contract providing therefor. The first answer filed by the company raises no objection whatever to the notes and mortgages, that is, it is not contended that the company was not liable on them at the time they were given. The second answer filed after the company had changed its name makes no specific objection to the provisions contained in the notes and mortgages for an attorney’s fee. Indeed, no objection was raised and no reference made throughout the trial to an attorney’s fee until the coming in of the decree, when counsel for' defendant excepted to the *304 same. We are satisfied, in the circumstances of this case, that the trial court committed no error in allowing attorney’s fees.
Decided July 10, A. D. 1913.
Rehearing denied July 14, A. D. 1913.
There are other considerations strongly supporting plaintiff’s equities, which we have not deemed it necessary to comment upon.
The judgment of the trial court is affirmed.
The original opinion filed by us will be withdrawn, and this opinion substituted therefor.
Hurlb-ut, Judge, being of counsel in the case, not participating.