[No. 15848.    In Bank.—December 10, 1895.]

W. B. BANCROFT, APPELLANT, v. H. H. BANCROFT, RESPONDENT.

CONTRACTS—TRANSFER OF STOCK—UNDUE INFLUENCE—EXCLUSIVE REMEDY — RESCISSION — DAMAGES NOT RECOVERABLE.—Where a plaintiff has been led solely through the undue influence of the defendant to transfer stock in a corporation to the defendant for an inadequate consideration, the exclusive remedy in such a case is a prompt rescission of the contract, or an offer to rescind it, so as to put the other party *in statu quo;* and if he fails to rescind promptly, he thereby affirms the contract, and cannot maintain an action for damages upon the ground of undue influence in procuring the transfer.

ID.—DISTINCTION BETWEEN FRAUD AND UNDUE INFLUENCE—REMEDY.—
Where a contract was induced by fraud, the injured party may affirm
the contract and recover damages in an action for deceit according to
the terms upon which he was led to believe that he was contracting;
but where the terms of the contract are perfectly understood, but as-
sented to only because of the exercise of duress, menace, or undue in-
fluence, an affirmance being necessarily of the terms of the contract as
they were understood when it was made, if those terms are fully com-
plied with, there is nothing due upon the contract, and there can be no
cause of action for damages.

ID.—EFFECT OF UNDUE INFLUENCE—TRANSFER NOT VOID, BUT VOIDABLE.
A contract of transfer is not rendered void by undue influence, but is
only voidable upon restoration of the consideration paid at the option of
the party aggrieved; and by failing to exercise the option to rescind it
within a reasonable time, the contract is affirmed.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco.  J. M. SEAWELL,
Judge.

The facts are stated in the opinion of the court.

*Mastick, Belcher & Mastick*, for Appellant.

Wherever there is an obligation arising from opera-
tion of law, and a breach of that obligation, the party
injured may, by action, recover the amount which will
compensate him for all the detriment proximately caused
by the breach, whether the law gives him other reme-
dies or not.  (Civ. Code, secs. 1427, 1428, 1708, 3281,
3282, 3333; *Wood* v. *Franks*, 56 Cal. 217.)  Where a
contract has been procured by fraud, the injured party
may, if he so elect, affirm the contract and sue for dam-
ages for the tort.  (*Sheldon* v. *Steamship Uncle Sam*, 18
Cal. 534; 79 Am. Dec. 193; *Gifford* v. *Carvill*, 29 Cal.
593; *Ahrens* v. *Adler*, 33 Cal. 608; *Robarts* v. *Haley*, 65
Cal. 402; *Loaiza* v. *Superior Court*, 85 Cal. 30; 20 Am.
St. Rep. 197; Cooley on Torts, 2d ed., 506; Hilliard on
Torts, 4th ed., 74; Bigelow on Fraud, 6.)

*E. J. McCutchen*, for Respondent.

The plaintiff was obliged to rescind the contract
within a reasonable time, before he could maintain this
action.  (Civ. Code, secs. 1689, 1691; *Burkle* v. *Levy*, 70

Cal. 250; *Bailey* v. *Fox*, 78 Cal. 389.) An action for damages cannot be maintained for obtaining property by means of undue influence. (*Le Caux* v. *Eden*, 2 Doug. 594.)

McFARLAND, J.—A demurrer to the amended complaint was sustained, and, plaintiff declining to further amend, judgment was rendered for defendant, from which plaintiff appeals. The complaint is substantially as follows: Defendant is the uncle of plaintiff, and ever since the latter's boyhood plaintiff was under the control and direction of defendant, and in his employ, and a part of the time resided with him. Defendant was accustomed in a great measure to guide and direct plaintiff's actions in business and other matters; was tyrannical and overbearing, and impatient of opposition; and thus had and retained great influence over plaintiff, who was accustomed to rely upon and be guided by defendant in matters of business. Defendant owned much more than a majority of the stock of a certain corporation called the Bancroft Company, and entirely controlled and managed its affairs. Defendant was the president of said corporation, and plaintiff was employed as the manager of its business. In September, 1887, plaintiff became the owner of thirteen hundred and forty-five shares of the stock of said corporation, and continued to own the same until the thirteenth day of February, 1891. In November, 1890, plaintiff borrowed three thousand five hundred dollars from the People's Home Savings Bank, and, as security therefor, pledged to said bank said thirteen hundred and forty-five shares of stock. On February 12, 1891, defendant demanded of plaintiff that plaintiff should transfer and deliver to defendant the said thirteen hundred and forty-five shares of stock, and all his interest in the assets and property of said corporation for the sum of five thousand dollars, and then and there "informed plaintiff that unless he should forthwith transfer to him [defendant] the said stock and property on the terms aforesaid,

he [defendant] would inform the said bank that plain-
tiff was not the owner of said stock, or any part thereof,
and that plaintiff had pledged said stock without right
or authority." He also said that he (defendant) would
not pay more than two thousand dollars of said indebt-
edness of plaintiff to said bank, and would levy assess-
ments on the stock of said corporation to the extent of
closing out its business. "Thereupon plaintiff, solely
through the influence possessed over him by defendant,
and his habitual fear of defendant, and terrified by the
threats aforesaid, and fully believing that defendant
would carry said threats into execution, and would make
to said bank and to others the statements so threatened,
and that by reason of such statements plaintiff's char-
acter and reputation would be blasted and destroyed in
the community in which he was residing and doing
business, on the thirteenth day of February, 1891, ac-
ceded to said demand." Thereupon defendant directed
plaintiff to deliver said stock to the said Bancroft Com-
pany, and to give to said company a bill of sale of all
his interest in the property of said corporation, which
plaintiff did on said day, "solely for the reasons afore-
said." The said company paid said indebtedness to
said bank, and paid the balance of the five thousand
dollars to plaintiff. It is averred that "plaintiff's con-
sent to so transfer and deliver said stock to said corpo-
ration and to execute the bill of sale aforesaid was not
freely given, but was obtained solely by the means afore-
said, and in consequence of the menace and the un-
due influence so exercised by defendant as aforesaid."
Also "that, as plaintiff is informed and believes, the
value of said thirteen hundred and forty-five shares of
stock on the said thirteenth day of February, 1891, was
the sum of fifty thousand dollars, as was then well
known to defendant, and plaintiff has been damaged by
the wrongful acts of defendant as aforesaid in the sum
of forty-five thousand dollars." It is also averred, upon
information and belief, that after said transaction de-
fendant so mismanaged the affairs of said corporation

that "the said shares of stock became, and were at the commencement of this action, greatly depreciated, and of little or no value." The prayer is for "judgment against defendant for the sum of forty-five thousand dollars and for costs of suit." It does not appear when the action was commenced, but the present complaint was filed November 6, 1893, nineteen months after the alleged cause of action accrued. No offer to rescind was ever made by appellant.

Waiving all questions as to the sufficiency of the complaint in other respects, we think that the learned judge of the court below was right in holding that it does not show any ground for avoiding the sale through want of the free consent of the appellant, unless that ground be "undue influence"; and that in such a case the remedy is rescission. It is admitted that no case can be found in all the books where a general action for damages has been maintained upon the ground of undue influence in procuring a sale or other contract. In *Le Caux* v. *Eden*, 2 Doug. 594, the question was whether an action at common law could be maintained for an imprisonment on a capture at sea *as prize*, and Buller, justice, said: "There is no case in which it has ever been holden that such an action would lie; and if it could be maintained, there are, in every way, such frequent opportunities for it that it must have happened in every day's practice, or some instances at least must have been in the memory of those who have had long experience in 'Westminster Hall'; but there is not the smallest trace of such a determination, or even dictum, in any court in England. A universal silence in Westminster Hall on a subject which so frequently gives occasion for litigation is a strong argument to prove that no such action can be sustained." That case was decided in 1781, and dealt with litigation which could arise only out of the exceptional condition of war. How much stronger, therefore, is the authority of more than another hundred years of "silence" in the courts of both England and America, upon a subject which, both in

peace and war, "so frequently gives occasion for litigation." But, in addition to this negative authority, it is clear upon principle that this present action should not be maintained, because to maintain it would be to violate the wholesome and fundamental doctrine that in such a case the party claiming to be aggrieved must promptly rescind, or offer to rescind, so as to put the other party *in statu quo.* He cannot wait to speculate on future contingencies. The sale from appellant to respondent was not void; it was only voidable upon restoration of the consideration paid. It has been held, it is true, that an action to recover damages for a deceit or fraud will lie; but that is on the ground that the party defrauded had no knowledge of the facts constituting the fraud. Even in that case great wrong is sometimes done when rescission is not required; but the rule should not be extended to other cases to which it has not been applied. The provisions of our Civil Code, all construed together, do not change the law on the subject. If it be said that a case could be imagined where the facts constituting the alleged undue influence *were not known* to the complaining party, and that there rescission should not be required, it is sufficient to reply that the case at bar is not such case.

The judgment is affirmed.

BEATTY, C. J., concurring.—"A contract which is not free is nevertheless not absolutely void, but may be rescinded by the parties in the manner prescribed by the chapter on rescission." (Civ. Code, sec. 1566.)

The contract by which plaintiff parted with his stock was not void, but merely voidable at his option. He had the choice to affirm it or to rescind it, and it appears that he affirmed it by failing to rescind promptly when freed from the undue influence by which his consent was obtained. (Civ. Code, sec. 1691.)

Having affirmed the contract, can he recover damages? He claims that he is entitled to recover the full value of the stock upon the same grounds that sustain an action

for deceit in case of a contract induced by fraud. But the analogy does not hold. When a contract induced by fraud is affirmed by the injured party, he affirms it (as he has the right to do) according to the terms upon which he was led to believe he was contracting; and what he recovers in an action for deceit is the value of that which he believed he was getting, and the other party knew he expected to get, but which he did not in fact get, or a value which he did not intend to part with, and the other party knew he did not intend to part with. In other words, he affirms the contract as he was induced by the other party to understand it, and he recovers what, according to such understanding, he ought to have or ought not to have parted with. In case of a contract the terms of which are perfectly understood, but are assented to only because of the exercise of duress, menace, or undue influence, the right of the injured party to rescind or affirm exists the same as in cases of fraud. But, as in cases of fraud, an affirmance is necessarily of the terms of the contract as they were understood when the consent was given; and if those terms have been fully complied with, as in this case, there is nothing due upon the contract and no cause of action.

If the plaintiff had promptly given notice of his repudiation of the contract, and offered to pay back the five thousand dollars upon condition that the stock was returned, or even without such offer if the defendant had parted with the stock or its value had depreciated, he might have maintained an action for the stock or its value based upon the rescission, but he cannot recover upon an affirmance of the contract what he never expected to get under the contract.

TEMPLE, J., and HENSHAW, J., concurred.

GAROUTTE, J., dissenting.—I dissent. It is claimed that the conduct of defendant practiced toward plaintiff amounts in law to duress, menace, and undue influence. And, as to whether or not these acts are sufficient in law

to constitute menace or duress, I will not discuss; for in sustaining the demurrer to the complaint, the trial court conceded a case of undue influence to have been stated, and respondent, by his argument, substantially concurs in such views of the trial court. This being true, the contract is no better and occupies no different position than though menace and duress also entered as elements in its creation.

It will be observed that the present action is not one for a rescission of the contract, but is an action at law for compensatory damages; and the trial court held against the sufficiency of the complaint upon the broad ground that an action at law for damages will not lie in a case like the one at bar, but that relief can alone be obtained by rescission in a court of equity; and the soundness of this ruling is the point involved. It may be said that no authority by either side has been cited in point, for or against the proposition of law under consideration, and my own research fails to recall a single precedent. Respondent, as a last resort, is forced to rely upon the case of *Le Caux* v. *Eden,* 2 Doug. 602, where Justice Buller made some very general observations, which are cited in the main opinion. But, in view of the fact that for such wrongs as these a remedy by rescission has always been recognized, and that it would in almost every case be a much more adequate remedy than an action for damages, as the practicers of these frauds are generally financially irresponsible, we think in this case but little weight should be attached to the very general principle declared by the learned English judge. The necessity and advisability of bringing this character. of action may seldom arise. But, beyond this, the only question here is the applicability of a certain principle of law to a given state of facts, and, even if the question has arisen for the first time, it is as much the duty of the court to now determine it upon principle and reason as if it had come before the court for the first determination a hundred years ago. Precedents go down before principles any way. Again,

there has been a time when there was no precedent for the decision of any case. New precedents are being made at the present, and will continue to be made in the future; and the day is long distant when a precedent may be found for every case arising within the vast domain of the law.

It is not disputed that an action for damages upon a contract secured by fraud will be sustained, and that a resort to a court of equity for relief is not necessary. Such doctrine is elementary, and cases everywhere and without number support it. But it is insisted that the rule of law is different as to menace, duress, and undue influence. In substance, the contention is, that if A deceives me by falsehood, and thereby secures from me a contract to my great loss, I may recover from him in damages, for it is fraud. But if B, with pistol at my head, threatens to kill me, and thereby procures a similar contract, I may not recover from him in damages, because, forsooth, his acts do not constitute fraud, but menace. Or, if C procures a similar contract from me by taking a grossly oppressive and unfair advantage of my necessities and distress, no action at law for damages will lie against him, for he has not practiced fraud, but has used undue influence. I am wholly unable to comprehend why a different rule of law is applicable to the two classes of cases furnished by the above illustrations. Certainly, the fraud of A is no more iniquitous than the menace of B, or the undue influence of C; and I think it illy becomes either one of these wrongdoers to say: "You have no choice of actions. Your only remedy is rescission. I will not pay the damage you have suffered from my unlawful acts, but demand that I be placed in my original position." I think that neither A, B, nor C should be allowed to name the action which may be brought against him, and, if the party injured is able to secure adequate relief by damages, the road to that remedy should be open to him. Let us take the case of valuable securities resting upon a fluctuating market, and before the aggrieved party could

get into court for relief by rescission, using the diligence demanded by the law, the securities become valueless. Is there no remedy by damages? If not, the wrongdoer is a lucky rogue, for in the interim he may have realized upon these securities, and still be ready to return the worthless paper to the owner upon demand or at the end of litigation. It would seem that such result should not be allowed under the guise of law, for it is gross injustice and a premium upon fraud.

Corporation stock often assumes great value as the time approaches for the election of a new directorate. Upon the day after such election its value may be merely nominal. At the very moment when it is of great value may the owner be deprived of it by menace or undue influence, and his only redress for the wrong be a judgment for the return of the stock at a time when it is utterly worthless? Such a judgment furnishes no redress, for it gives no relief. If this illustration portrays a case of *damnum absque injuria* the law is not what it should be. To my mind the law contains no such glaring defect.

Taking a broad view of the question, we are justified in saying that this contract was procured through fraud. What is undue influence, menace, or duress but fraud? Fraud is certainly a broader word than deceit; by deceit fraud is accomplished, but it is likewise accomplished by many other practices. Mr. Bigelow, in his work upon Fraud, page 6, declares it may be an infringement of the legal rights of another by circumvention and without deceit. Mr. Hilliard declares (Hilliard on Torts, 3d ed., 138): "Fraud properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence reposed, and are injurious to another, or by which an undue, unconscientious advantage is taken of another." And Cooley, in his work upon Torts, says (Cooley on Torts, *506): "Duress is a species of fraud in which compulsion in some form takes the place of deception in accomplishing the injury." It will thus be seen that deceit is but

one of many kinds of fraud, and, while actions for damages arising from contracts procured by deceit alone are of common occurrence, we find no principle declared in those cases which limits the remedy by reason of some inherent quality found in the definition of the word "deceit"; but, rather, deceit is declared to be a fraud, and compensation in the nature of damages for fraud is but justice in its simplest form.

Let us assume that contracts procured through menace, duress, or undue influence are made through agencies which may not technically come within the definition of fraud. What matters it? All the parties stand upon the same plane. The practices in either case are equally forbidden by the law. They are all morally bad. They are violative of the same rights of the party injured. They are violative of the same duties incumbent upon the party doing the wrong. Again, the contract made is no better or worse in the one case than in the other; and I know of no reason why the remedies should not be as many and as full and complete in the one case as in the other. The wrongdoer accomplishes the same wrong in each, and does it with the same bad intent; and, as to the victim's remedy, it would seem to be wholly immaterial whether the means to the end be fraud, undue influence, or duress. The cases upon principle are analogous, and the law applicable to the one state of facts must of necessity control the other.

It is claimed that in the case of fraud the party injured does not know the facts, while the contrary conditions exist in a case of duress, menace, or undue influence. Conceding the claim, the principle involved is not changed thereby. In one case the act is induced by a want of knowledge, and in the other by overpowering influences. There is no more consent in the one than in the other, and there is the same wrongful interference with the party's rights in both. Neither does the principle of acquiescence in the contract occupy any different position in the two cases. In a case of fraud nothing is done and no remedy invoked until the

fraud is discovered, and, when discovered, the party seek-
ing relief is in exactly the same position, as to the con-
tract and the facts leading up to it, as though it had been
obtained by undue influence or duress. When the fraud
is discovered the party is called upon to act, and may
either elect to confirm the contract and sue for damages
at law for the detriment, or go into a court of equity for
relief upon the rescission of the contract; and upon an-
alogous reason a like choice of remedies must be open
to him in a case similar to the one at bar.

The Civil Code of this state, in speaking of obligations
imposed by law, declares (section 1708): "Every per-
son is bound without contract to abstain from injuring
the person or property of another, or infringing upon
any of his rights." Section 1428 declares that obliga-
tions may arise by operation of law, and further pro-
vides: "An obligation arising from operation of law
may be enforced in the manner provided by law, or by
civil action or proceeding." Section 3281 declares:
"Every person who suffers detriment from the unlaw-
ful act or omission of another may recover from the
person in fault a compensation therefor in money which
is called damages." These principles would seem to be
but reiterations of elementary law, but, if not, and they
take advanced ground, then beyond question they blaze
a path through virgin forests plainly leading to a court
of law for relief. By unlawful means defendant in-
duced plaintiff to part with his property for an in-
adequate consideration. This was a violation of an
obligation imposed upon him by law, for it was an in-
fringement upon plaintiff's rights, and he was entitled
to damages in an amount which would compensate him
for the detriment directly caused thereby. It is con-
tended by defendant that cases involving the principle
here discussed form exceptions to the law as declared in
section 3281, *supra*. The section states no exception,
but, upon the contrary, is as broad as language can
make it. Neither do I find any exception stated else-
where in the code. While it is true the code provides

CX. CAL.—25

for "specific and preventive relief," still there is nothing to indicate that the remedies there declared should be exclusive. Again, the contention, if sound, would likewise deny any remedy for damages in a case of a contract procured by fraud or deceit, and this we have seen is not the law of this state or any other state. In the case of *Wood* v. *Franks*, 56 Cal. 217, the principle of law to which we hold is fairly illustrated and fully supported. In that case, after quoting the sections of the Civil Code, to which reference has been made, the court said: "Thus it will be seen that wherever there is an obligation arising from operation of law, and a breach of that obligation, the party injured may, by action, recover the amount which will compensate him for all the detriment proximately caused by the breach."

To support the conclusion I have arrived at in this case, I do not hold that in all cases of contract procured by "undue influence" the remedy of damages is open. Rescission is the only remedy in a case of "mistake," for no fraud has been practiced; there has been no wrongdoing, the transaction has been innocent, and the parties must be, and should be, satisfied to return to their original position. Such should also be the rule in many cases of undue influence, as where the relations of the contracting parties were such that the law, *regardless of any question of* bad and wicked intention, would declare the contract void. But the rule here declared is limited to those cases possessing the characteristics of torts, where an act has been done intentionally and knowingly for the very purpose of securing the undue advantage which results. There must be bad faith and a sense of wrongdoing; and such was certainly this case, as shown by the allegations of the complaint.

HARRISON, J., concurred in the foregoing opinion of Mr. Justice Garoutte.

Mr. Justice VAN FLEET, being disqualified, did not participate in the decision of this cause.

Rehearing denied.