[Civ. No. 2143. First Appellate District.—February 7, 1918.]

GEORGE K. PORTER, Respondent, v. ANGLO & LONDON PARIS NATIONAL BANK OF SAN FRANCISCO (a Corporation), Appellant; LOUIS ROTHENBERG, Intervener and Appellant.

CORPORATION LAW—SALE OF ASSETS—CONSENT OF STOCKHOLDERS.—The sale by a corporation of all of its assets is void where not consummated in conformity with section 361a of the Civil Code, requiring the consent of two-thirds of the stockholders, and the purchaser cannot under such transfer claim money on deposit in bank in the name of the corporation as against an execution creditor of the corporation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. C. Crothers, Judge.

The facts are stated in the opinion of the court.

Wm. M. Cannon, and Wm. M. Abbott, for Respondent.

Lilienthal, McKinstry & Raymond, for Appellant.

Henry G. W. Dinkelspiel, and John R. Jones, for Intervener and Appellant.

LENNON, P. J.—On December 4, 1913, prior to the institution of the present action, the judgment against the Rothenberg Company, incorporated, was recovered in an action wherein the plaintiff here, George K. Porter, was plaintiff and the said Rothenberg Company, incorporated, was defendant. Execution upon the judgment thus obtained was issued and levied upon a certain sum of money on deposit in the name of the Rothenberg Co. "not incorporated" with the defendant in this action, the Anglo & London Paris National Bank of San Francisco. Upon a proceeding supplementary to said execution, Louis Rothenberg, the intervener in the present action, appeared and claimed that the money so deposited and levied upon belonged to him because the Rothenberg Co., Inc., against which the judgment in the original action was obtained, had ceased to exist prior to the levy of the execution, and that immediately prior to its dissolution it had transferred the deposit in question to the Rothenberg Co., "not incorporated," under which name he individually was doing business.

The court in the original action, upon the hearing of the supplementary proceeding, ordered that the deposit in question be held by the defendant bank pending the result of the present action, which, pursuant to the direction of the court, was instituted for the purpose of determining whether or not said deposit belonged, at the time of the levy of the execution, to the Rothenberg Co., Inc., or to the Rothenberg Co., "not inc."

The plaintiff's complaint in the present action proceeded in substantial accord with the facts above narrated, and all of its material allegations were admitted by the bank defendant save the allegation that on January 10, 1914, the date of the levy of the execution, there was on deposit with it the sum of $650, or any other sum, belonging to and standing in the name of the Rothenberg Co., Inc.

Pursuant to stipulation and order, Louis Rothenberg, the intervener, interposed his complaint in intervention wherein,

among other things, he alleged that the Rothenberg Co., "not inc.," was in fact himself doing business under the fictitious name of the "Rothenberg Co.," and that he was the owner of the money which had been levied upon and on deposit with the bank defendant in the name of the Rothenberg Co., "not inc."

After trial upon the issues thus raised, the court below found that, at the time of the issuance and levy of the execution in question, the bank defendant had in its possession and under its control an amount of money exceeding the sum of $650 belonging to the Rothenberg Co., Inc.; that the intervener did not then or at any other time have any interest in or title thereto; and that the same was subject to the lien of the plaintiff's execution. Judgment was accordingly entered in favor of the plaintiff and against the bank defendant and the intervener as well, from which judgment the intervener alone, and in his own behalf, has appealed.

The trial court's finding as to the ownership of the money in suit is assailed upon the ground that it is contrary to the evidence. The evidence in so far as it related to the ownership of the money in suit is in substance as follows: On and prior to June 30, 1913, the Rothenberg Co., Inc., was an ordinary commercial corporation. At midnight on the last-mentioned date the life of the Rothenberg Co., Inc., of which the intervener was then a director and the president, expired because of the fact that it had reached the period of its corporate existence as prescribed in its amended articles of incorporation, which were prepared and filed with the Secretary of State after the rendition but before the entry of the judgment against it in the prior action. The life of the corporation as thus shortened ended before said judgment was entered. During the life of the corporation, to wit, on June 24, 1913, there was recorded with the recorder of the city and county of San Francisco a paper writing signed "The Rothenberg Co. by J. Hursa, secretary, intending vendor," and "Louis Rothenberg, intending vendee," which purported to give notice that on Monday, the thirtieth day of June, 1913, at the hour of 4.30 P. M., the Rothenberg Co., Inc., would, as "intending vendor," at its place of business in the city and county of San Francisco, "consummate" a sale to Louis Rothenberg, "intending vendee . . . of all of the assets, property and effects of every kind and character be-

longing to the intending vendor." On June 30, 1913, a written bill of sale, as shown by secondary evidence after proof either of its loss or destruction by the intervener signed by Sanford Rothenberg, son of Louis Rothenberg, the intervener, and John Hursa, respectively the vice-president and secretary of the corporation, was executed to Louis Rothenberg, the intervener, which contained the recital, according to the recollection of an attorney witness for the intervener who drafted it, that "for and in consideration of the sum of ten dollars gold coin in hand paid by Louis Rothenberg to the Rothenberg Co., receipt of which is acknowledged, it transferred to Louis Rothenberg all of the assets of the corporation." On the same day, June 30, 1913, pursuant to the sale thus attempted to be consummated, all of the assets of the corporation, save and except the corporation's money on deposit with the defendant bank, were thereupon delivered to the intervener. The corporation's money remained standing in the name of the corporation upon the books of the bank until the following day, July 1, 1913, when the account was transferred to Louis Rothenberg Co., "not incorporated."

The character and condition of this account prior and subsequent to July 1, 1913, and the circumstances attending its transfer on the books of the bank were shown, by a statement from the bank defendant, which was stipulated to be correct and admitted in evidence without objection, to be as follows: The account was originally opened as a corporation account prior to 1906 and, from that time, was carried under the title "The Rothenberg Co." upon the books of the Anglo-California Bank, Limited, and was continued as a corporation account under the same title upon the books of the bank defendant which absorbed and succeeded to the business of the Anglo-California Bank, Limited, until and including July 1, 1913, when "the balance in the account of the corporation amounting to $1,863.05 was withdrawn by a properly signed check" and on the same day deposited with the bank defendant to the credit of the "Rothenberg Co." Checks upon the account of the Rothenberg Co., Inc., were signed "The Rothenberg Co., Louis Rothenberg President." The check dated July 1, 1913, drawn by the Rothenberg Co., a corporation, on the bank defendant for $1,863.05 and paid and canceled on that date by the deposit of the sum called

for to the credit of the Rothenberg Co., "not incorporated," together with the closing statement of the account of the Rothenberg Co., incorporated, was delivered to the Rothenberg Co., incorporated, and is now in its possession. When this corporation account was thus transferred, it was represented to the bank that the new Rothenberg Co. was not incorporated and the deposit tag for $1,863.05, made at the time of the transfer, read "The Rothenberg Co., not incorporated." Checks against this new account were signed "The Rothenberg Co., Louis Rothenberg." There was $2,506.90 to the credit of this account on the books of the bank defendant on June 10, 1914, the date of the issuance of the execution out of the prior action, and on that date directed to be and levied upon "any funds to the credit of the Rothenberg Co., a corporation." No account appeared on the date last mentioned nor at any time subsequent thereto on the books of the bank defendant.

The foregoing practically undisputed facts fully support the trial court's findings and judgment.

Assuming, as counsel for the intervener contend, that the bill of sale in question, which was the basis of the intervener's claim of title to the money in suit, covered and controlled the corporation bank account and operated in and of itself and without more ado to transfer such account to the intervener, nevertheless the very fact that it purported to transfer all of the assets of the corporation to the intervener must result in its own undoing.

This is so because no showing was made or attempted that the purported sale was consummated in keeping with the provisions of section 361a of the Civil Code. In fact, it is fairly inferable from the evidence adduced upon the entire case that the provisions of that section were altogether ignored when the sale was made. That section reads: "No sale, lease, assignment, transfer or conveyance of the business, franchise and property, as a whole, of any corporation now existing, or hereafter to be formed in this state, shall be valid without the consent of stockholders thereof, holding of record at least two-thirds of the issued capital stock of such corporation; such consent to be either expressed in writing, executed and acknowledged by such stockholders, and attached to such sale, lease, assignment, transfer or conveyance, or by vote at a stockholders' meeting of such corporation called for that pur-

pose; but with such assent, so expressed, such sale, lease, as-signment, transfer or conveyance shall be valid; provided, however, that nothing herein contained shall be construed to limit the power of the directors of such corporation to make sales, leases, assignments, transfers or conveyances of corpo-rate property other than those hereinabove set forth.''

The quoted code section was in force at the time of the sale in question and, as was said in the case of *South Pasadena* v. *Pasadena Land etc. Co.,* 152 Cal. 581, [93 Pac. 490], ''This enactment·is not, on its face, a mere negative or prohibitive statute, forbidding that which before was permitted. It is both affirmative and negative in its terms. . . . It expresses a consent to such transfer in the manner prescribed, as well as a prohibition against such transfer in any other mode. . . . It deprives ordinary private business corporations of the power they previously possessed to dispose of their entire property, franchises, and business, as a whole, at the will of a mere majority of the stockholders, or of less than two-thirds of them. . . . ''

We have no doubt but that the evidence shows that it was the intent and purpose of the purported sale in question to transfer the corporation ''property as a whole'' to the inter-vener. While the word ''property''·was not specifically em-ployed in the bill of sale to designate the subject matter of the transfer, nevertheless the phrase ''all of the assets of the corporation'' which was employed for that purpose in the bill of sale and the preceding notice of intention to consum-mate the sale comprehended, and, therefore, included, the entire property of the corporation in the sale. (*Vaiden* v. *Hawkins,* 59 Miss. 406; *Lowber* v. *Le Roy,* 2 Sand. (N. Y.) 202; *Republic Life Ins. Co.* v. *Swigert,* 135 Ill. 150, [12 L. R. A. 328, 25 N. E. 680]; *Attorney General* v. *Atlantic Mutual Life Ins. Co.,* 100 N. Y. 279, [3 N. E. 193]; *Fitz-gerald* v. *Maxim Powder* (N. J.), 33 Atl. 1064; *Dauphin County* v. *Union etc. Co.,* 2 Pears. (Pa.) 38.)

Doubtless the trial court likewise construed the sale in ques-tion to be a transfer of the corporation's ''property as a whole.'' If the sale in question had been made with the written consent of two-thirds of the stockholders of the corpo-ration, such consent, by the express requirement of the stat-ute, was necessarily an essential accompaniment of the instru-ment which evidenced the sale. And while such consent, if it

had been expressed by a two-thirds vote of the stockholders at a stockholders' meeting called for that purpose, need not, perhaps, have accompanied the evidence of the sale, nevertheless such consent was not presumptively involved in the execution of the sale. Consequently, in the absence of a showing that such sale was consummated in conformity with the statutory requirements, the trial court correctly concluded that it was void as against the plaintiff, in the capacity of an execution creditor of the corporation, and therefore ineffectual as a transfer to the intervener of any right or title whatsoever in and to the money in suit. (*McShane* v. *Carter*, 80 Cal. 310, [22 Pac. 178]; *Pekin Min. Co.* v. *Kennedy*, 81 Cal. 356, [22 Pac. 679]; *Williams* v. *Gold Hill Mining Co.*, 96 Fed. 454; *South Pasadena* v. *Pasadena etc. Co., supra; Bennett* v. *Red Cloud Mining Co.*, 14 Cal. App. 728, [113 Pac. 119].)

As previously pointed out, it is the intervener's contention that the transfer of the money in suit was made to him by virtue of the purported sale in question, and was consummated in full before the termination of the life of the corporation. No claim is made, and, indeed, none could be made in the face of the facts of the case, that the check, drawn and signed by the intervener on July 1, 1913, on the account of the Rothenberg Company, incorporated, was a separate and independent transaction. The check referred to, having been an integral and inseparable factor in the attempted consummation of the sale of the corporation's property as a whole, possessed no greater force and effect as an evidence of the intervener's title to the money in suit than the bill of sale itself and consequently must fall with the bill of sale.

The conclusion which we have reached upon this particular phase of the case makes it unnecessary for us to discuss and decide the question as to whether or not the intervener was without authority to execute the check in question after the death of the corporation.

It is urged upon behalf of the intervener that there was no evidence to show that the money on deposit in the name of the Rothenberg Co., "not incorporated," at the time of the levy of the execution was the same fund transferred to the intervener on July 1, 1913.

This contention rests upon the fact that the evidence shows that the account originally credited to the Rothenberg Co., incorporated, was, after its entry in the name of the Rothenberg Co., "not incorporated," materially increased by deposits made from time to time by the intervener and at various times thereafter materially decreased by checks drawn upon it by the intervener.

Responding to this contention, it will be noted that, in conjunction with the facts previously narrated, the record contains some evidence to the effect that the account in question never at any time between July 1, 1913, the date of its transfer and January 10, 1914, the date of the levy of the execution, fell "below somewhere about one thousand five hundred dollars." It will be remembered that the Rothenberg Co., incorporated, died a natural death at midnight of June 30, 1913, and inasmuch as it was shown that the fund in the corporation's bank account, notwithstanding its attempted transfer to the intervener, was, at the time of the dissolution of the corporation and thereafter continued to be, a corporation asset, the intervener, as a matter of law and in spite of himself, became a trustee of the fund represented by and credited to that account. (Civ. Code, sec. 400.) And if it can be said, in the face of the evidence upon this phase of the case to the effect that the intervener, after the dissolution of the corporation, continued the business of the corporation under its original name at its original place of business, that the money deposited by the intervener to the credit of the transferred account was his own or other than the corporation's money, then the trial court was confronted with the situation of the intervener, as a trustee, having intermingled his own or other moneys with a trust fund committed by law to his care and keeping, and, in such a situation, it was the right and the duty of the trial court to disentangle the account. In so doing the trial court was permitted to presume that the several sums of money, from time to time added to or withdrawn by the intervener from the trust fund, were no part of the trust fund. If, as the evidence shows and the trial court in effect found, at the time of the levy of the execution there remained of the original trust fund a sum equal to or in excess of the sum sued for and sought to be impressed with the trust, the legal presumption is that such sum, in the absence of a showing to the

contrary, was part and parcel of the original trust fund. (*Elizalde* v. *Elizalde,* 137 Cal. 634, [66 Pac. 369, 70 Pac. 861].)

This disposes of all of the points worthy of discussion made in support of the appeal save the point to the effect that no execution could have legally issued out of the prior action because that action had abated by the death of the corporation before the entry of the judgment therein. Inasmuch as this particular point was made only in the closing brief of counsel for the intervener, we are not disposed to notice it further than to say that, conceding the correctness of the contention, the validity of the judgment in so far as it concerns the bank defendant, in the absence of an appeal by that defendant, is not before us, and that, inasmuch as the intervener's interest in the action was only that of an individual seeking to establish a purely personal claim to the money in suit, the invalidity for any cause of the judgment against the bank cannot concern him as an individual in the absence of a showing that he had a valid individual claim to the money in suit.

The judgment appealed from is affirmed.

Kerrigan, J., and Beasly, J., *pro tem.,* concurred.