[Civ. Nos. 6748, 6921. Fourth Dist. Oct. 22, 1962.]

LONG CONSTRUCTION COMPANY, Plaintiff and Appellant, v. EMPIRE DRIVE-IN THEATRES, INC., Defendant and Appellant; TU-VU DRIVE-IN CORPORATION, Claimant and Respondent.

(Consolidated Appeals.)

728

William F. Davies, White, Froehlich & Peterson and Ernest L. Hunt, Jr., for Plaintiff and Appellant.

Higgs, Fletcher & Mack and Vincent E. Whelan for Defendant and Appellant and for Claimant and Respondent.

COUGHLIN, J.—The appeals in this matter arise out of a proceeding to obtain confirmation of an award by arbitration in which a judgment was entered; a writ of execution was issued therein and levied upon certain theatre equipment; claims were filed by a third party contending that it was the owner of the property upon which the levy had been made; hearings upon said claims resulted in judgments in favor of the third party claimant; the judgment debtor moved to quash and recall the writ of execution; and its motion was denied. The judgment creditor appeals from the judgments in favor of the third party claimant and the judgment debtor appeals from the order denying its motion to quash. By stipulation, and order of this court, the three appeals have been consolidated for hearing and determination.

The Long Construction Company, hereinafter referred to as "Long" or the judgment creditor, brought the proceeding in question which resulted in a judgment based upon and after confirmation of an arbitration award in its favor against Empire Drive-In Theatres, Inc., hereinafter referred to as "Empire" or the judgment debtor; obtained issuance of a writ of execution upon the money provisions of that judgment; and caused this writ to be levied upon theatre equipment formerly in possession of "Empire" but, at the time of levy, in possession of and claimed by Tu-Vu Drive-In Corporation, hereinafter referred to as "Tu-Vu" or third party claimant.

The judgment in favor of "Long" is dated October 10, 1960 and was ordered entered *nunc pro tunc* as of October 1, 1959; recites that the award of the arbitrator was confirmed by an order of court dated October 1, 1959, which directed that judgment be entered accordingly; decrees that "Long" shall recover from "Empire" a designated number of shares of stock of the latter corporation to be delivered within a specified time; and further decrees that in the event "Empire" does not issue and deliver the aforesaid stock within that time that it shall pay to "Long" the sum of $24,500. Thereafter the attorney for "Long" told the county clerk that the shares of stock in question had not been delivered to his client and, at his request, a writ of execution was issued covering the alternate money judgment in the sum of $24,500.

Subsequently, a levy was made under this writ upon theatre equipment which "Tu-Vu" had purchased from "Empire," the judgment debtor, two years previously, i.e., on September 30, 1958.

Prior to September 30, 1958, "Empire" operated a drive-in theatre; had leased the real property used for this purpose; and was purchasing the equipment in question under a contract of sale. On that date, pursuant to an agreement between "Empire" and "Tu-Vu," substantially all of the assets of the former were transferred to the latter, including a sublease of the theatre real property for the remainder of the term of the master lease, and an assignment of its interest in the theatre equipment. In exchange "Tu-Vu" agreed to assume and pay the rental prescribed by the master lease; to assume and pay the equipment sales contract obligation, which amounted to $58,652.10; to pay into escrow the sum of $23,-840, which was to be used to pay "Empire's" creditors in full; and to pay the further sum of $6,160, which was to be used for additional construction work. Thereafter, "Tu-Vu" took possession of the theatre; operated the same; paid the prescribed rental, which amounted to approximately $32,000; paid between $30,000 and $35,000 on the conditional sales contract; and paid $30,000 into escrow.

The foregoing agreement and the transfer in question, preliminary to execution, were approved at a special meeting of the stockholders of "Empire" by the owners of 11,430 of the corporation's 21,757 issued shares of stock. The apparent purpose of this approval was to comply with section 3901 of the Corporations Code which provides:

"A corporation shall not sell, lease, convey, exchange, transfer, or otherwise dispose of all or substantially all of its property and assets except in accordance with one of the following subdivisions:

" . . . . . . . . . . . . .

"(b) Under authority of a resolution of its board of directors and with the approval of the principal terms of the transaction and the nature and amount of the consideration by vote or written consent of shareholders entitled to exercise a majority of the voting power of the corporation."

After levy of execution upon the theatre equipment, "Tu-Vu" filed a third party claim in the instant proceeding seeking release thereof; a hearing was held thereon before the Honorable Bonsall Noon; and judgment was entered in its

favor. Because the claim in question had not described all of the equipment levied upon, "Tu-Vu" filed another third party claim seeking release of the balance thereof; a hearing followed before the Honorable George A. Lazar; and judgment again was entered in its favor. "Long" has appealed from these two judgments.

Between the entry of the first and second judgments, "Empire" moved, and the court denied its motion, to recall and quash the writ of execution upon the ground that it had been issued illegally. "Empire" has appealed from this order of denial.

## APPEAL FROM JUDGMENT BY HONORABLE
## GEORGE A. LAZAR

At the hearing before Judge Lazar, "Long" contended, and now contends, that the agreement and transfer in question were not made in conformance to the requirements of section 3901 of the Corporations Code; that 9000 of the 11,430 issued shares of stock of "Empire" which voted approval of the transfer to "Tu-Vu" were issued illegally; that the 9000 shares in question had been issued to a Mr. Tanner, who was president of "Empire," after a permit authorizing the same had expired and prior to its renewal; that, in any event, Tanner had not complied with the conditions of such permit; that, for this reason, the subject transfer did not have approval of the shareholders entitled to exercise a majority of the voting power of the transferring corporation; that "Long," as a judgment creditor of that corporation, had a right to assert the claimed invalidity of the transfer in support of its contention that "Tu-Vu," the third party claimant, had no title to the equipment levied upon; and that the claim in question should be denied.

One of the primary issues raised by this contention is whether a creditor of a transferring corporation has a right to attack a transfer which did not conform to the provisions of section 3901 of the Corporations Code. We have concluded that it does not have such a right. In support of its position to the contrary, "Long" has cited a number of cases which it contends establish the rule that the provisions of section 3901 were enacted for the benefit of stockholders and creditors. Our review of the decisions in these cases convinces us that the rule contended for has not been established.

Principally relied upon is the decision in *Porter* v. *Anglo &*

*London Paris Nat. Bank,* 36 Cal.App. 191 [171 P. 845], where, in an action by a judgment creditor to determine title to a bank account levied upon under a writ of execution in his favor, the court declared that a previous transfer thereof by his judgment debtor, a corporation, to the defendant, a third party, was void because of noncompliance with the provisions of former Civil Code section 361a, requiring stockholder approval, and subjected the bank account to the plaintiff's execution lien. Appellant "Long" contends that the decision in the cited case is controlling in the case at bar because the provisions of former Civil Code section 361a are substantially identical to those now contained in section 3901 of the Corporations Code. The weakness in this contention lies, primarily, in the asserted premise that the two code sections are substantially identical. Former Civil Code section 361a provided that "No sale, . . . transfer or conveyance of the business, franchise and property, as a whole, of any corporation . . ., *shall be valid* without the consent of the stockholders thereof," holding two-thirds of its issued capital stock. (Italics ours.) (Civ. Code, § 361a, Stats. 1903, p. 396.) Contrastingly, section 3901, which heretofore has been quoted herein, does not declare that a sale, transfer or conveyance without the required consent is not "valid." In the cited case, i.e., *Porter* v. *Anglo & London Paris Nat. Bank, supra,* 36 Cal.App. 191, p. 197, the court held that the transfer there under consideration "was *void* as against the plaintiff, in the capacity of an execution creditor of the corporation, and therefore ineffectual as a transfer to the intervener [the third party claimant] of any . . . money in suit." (Italics ours.) Contrary to this ruling, in *Solorza* v. *Park Water Co.,* 86 Cal. App.2d 653, 658-661 [195 P.2d 523], where stockholders of a corporation brought an action to effect the rescission of a transfer of all of its assets, which had been made without obtaining the consent required by section 3901, the court held that the transfer in question was not void but voidable; that the action of a board of directors "in making a sale in contravention of the provisions of the statute is not to be regarded as illegal and void ab initio, but rather as an ultra vires act of the directors, and voidable at the election of stockholders or creditors;" "that while such transactions . . . are violative of the provisions of the statute, they are voidable and may be rescinded and set aside at the election of a shareholder or creditor, for whose benefit alone the statute was enacted;" and

that as a condition to rescission the transferee must be placed *in status quo*.

The *Porter* case (*Porter* v. *Anglo & London Paris Nat. Bank, supra,* 36 Cal.App. 191), pivoted on the conclusion that the transfer under consideration was void, as evidenced by the decisions cited in support thereof, i.e., *Pekin Mining etc. Co.* v. *Kennedy,* 81 Cal. 356, 363 [22 P. 679]; *McShane* v. *Carter,* 80 Cal. 310, 312 [22 P. 178]; *Bennett* v. *Red Cloud Mining Co.,* 14 Cal.App. 728, 730 [113 P. 119]; *Williams* v. *Gold Hill Min. Co.,* 96 F. 454, wherein it was held that corporate transfers not in compliance with statutory provisions requiring stockholder consent were void, and for this reason could be attacked by any person connected with the title of the corporation, as well as its stockholders, and this included a corporation creditor claiming under an execution or mortgage lien. Appellant "Long" also cites the foregoing decisions in support of its contention.

The assertion in the *Solorza* case (*Solorza* v. *Park Water Co., supra,* 86 Cal.App.2d 653, 659), that section 3901 was enacted for the benefit of creditors of the subject corporation as well as its stockholders was pure dictum, reiterating the dicta in two prior cases to the same effect, in none of which were the rights of creditors involved. The latter cases, i.e., *Gunther* v. *Thompson,* 211 Cal. 631 [296 P. 611], and *Lost Burros Gold Min. Co.* v. *Inyo County Bank,* 83 Cal.App. 679 [257 P. 209], which also are relied upon by appellant "Long," involved the application of former Civil Code section 361a; held that a person who was not a stockholder or a creditor could not contest the validity of a transfer subject to but not in accord with the requirements of that section; in each instance affirmed a judgment denying relief to the person attacking the transfer; and in the course of the respective opinions therein stated that: "The provisions of section 361a are for the protection of stockholders and creditors of the corporation, and the stockholders and creditors alone have the right to object to such a transfer" (*Gunther* v. *Thompson, supra,* 211 Cal. 631, 634), and: "The legislative restriction in question was enacted for the benefit of stockholders and creditors of a selling corporation, and they alone have a right to object to the mode of transfer." (*Lost Burros Gold Min. Co.* v. *Inyo County Bank, supra,* 83 Cal.App. 679, 683.) Each of these two cases relies upon the decision in *City of South Pasadena* v. *Pasadena Land etc. Co.,* 152 Cal. 579, 584 [93 P.

490], as authority for the foregoing quoted statements of the law. However, the *South Pasadena* case (*City of South Pasadena* v. *Pasadena Land etc. Co., supra,* 152 Cal. 579, 584), merely held that former section 361a of the Civil Code permitted a *quasi*-public corporation to transfer all of its assets upon consent of its stockholders, a power not theretofore possessed by such a corporation. In the course of the opinion in that case it was said that ''In the absence of legislative restrictions . . . an ordinary commercial corporation, . . . can alienate its entire property whenever it is necessary or proper to do so for the best interests of its stockholders and creditors. (Citation.) And it would seem that the stockholders and creditors, alone, would have the right to object to such a transfer by a corporation of that character. . . . The effect of this statute [Civ. Code, § 361a] is, therefore, twofold. It deprives ordinary private business corporations of the power they previously possessed to dispose of their entire property, franchises, and business, as a whole, at the will of a mere majority of the stockholders, or of less than two-thirds of them, and it confers upon *quasi*-public corporations the power to make such dispositions with the consent of two-thirds of the stockholders expressed in the mode fixed, a power which such corporations did not have before.'' Even the dictum in the foregoing quotation does not support the conclusion that the court there said that section 361a was enacted for the benefit of creditors as well as stockholders.

In 1931, which was after the decision in all of the foregoing cases except that in *Solorza* v. *Park Water Co., supra,* 86 Cal. App.2d 653, former Civil Code section 361a was supplanted by Civil Code section 343, the provisions of which are similar to those in section 3901 of the Corporations Code; did not contain a provision declaring that a transfer in noncompliance therewith is invalid; and must be interpreted as intentionally removing such a consequence from such noncompliance. Two years later, i.e., in 1933, there was added to Civil Code section 343 the provisions now appearing in section 3902 of the Corporations Code that:

''The approval of the shareholders may be given before or after the adoption of the resolution by the board of directors, and before or after any such transfer or disposition.''

The effect of these provisions was especially noted in *Solorza* v. *Park Water Co., supra,* 86 Cal.App.2d 653, 659, and con-

tributed to the conclusion therein that a transfer in noncompliance with the present statute is voidable and not void.

The issue which now must be determined is whether a creditor of a corporation, as well as a stockholder therein, may attack a transfer subject to but not in conformity with the provisions of section 3901 of the Corporations Code; a transfer which is voidable and not void; which may be validated by subsequent approval of the stockholders alone (Corp. Code, § 3902) ; and which requires a rescission to set it aside.

Section 3901 makes no reference to creditors. A somewhat analogous situation was presented in *McKee* v. *Title Insurance etc. Co.*, 159 Cal. 206, 220-223 [113 P. 140], where corporation bonds, secured by a mortgage, were attacked by a creditor as invalid because not issued in compliance with the provisions of former Civil Code section 359 requiring stockholder approval and the court noting that there was no provision declaring the bonds to be void because of such noncompliance, held that the requirements in question were enacted for the protection of stockholders alone and reversed a judgment in favor of a creditor.

To permit a creditor to attack a transfer for noncompliance with the provisions of former Civil Code section 361a was not unreasonable under the status of the law prescribed by that section as interpreted by the courts; such a transfer was void; was not subject to subsequent approval by stockholders; and did not require any affirmative action to terminate its effect; but, to the contrary, was ineffectual to vest any right in the transferor; did not exist; and, in substance, never had taken place. As heretofore noted, such is not the present status of the law. (*Solorza* v. *Park Water Co., supra,* 86 Cal.App.2d 653.) ▋ ▋ Noncompliance with section 3901 does not inhibit immediate vesting of title in a transferee even though that title may be terminated because the transfer is voidable; creditors of the corporation who levy upon property so transferred levy upon property the title to which is in the transferee and not in the corporation; if, subsequent to transfer, the stockholders indicate their approval thereof, whether or not the corporation's creditors are in accord with this decision, the right to set aside the transfer ceases; and considering the provisions of sections 3901 and 3902 as a whole, it is reasonable to conclude that the subject statute was enacted for the benefit of the stockholders alone.

▋ Even assuming that a debtor corporation has the right

to set aside a transfer made by it in noncompliance with section 3901,[1] and its judgment creditor is subrogated to this right, or that by some juridical gymnastics the corporation's judgment creditor is subrogated to the rights of the stockholders in the premises, or even that the judgment creditor receives such a right directly from the statute, nevertheless, it could not prevail in a third-party-claim proceeding in which the transferee was claimant unless the transfer is rescinded. Being voidable only, such a transfer is fully operative until set aside. (*Loud* v. *Luse*, 214 Cal. 10, 12 [3 P.2d 542]; *Bancroft* v. *Bancroft*, 110 Cal. 374, 379 [42 P. 896]; *Hewlett* v. *Pilcher*, 85 Cal. 542, 544 [24 P. 781]; *Frink* v. *Roe*, 70 Cal. 296, 311-312 [11 P. 820].) ▮ In the instant case there was neither a notice of rescission nor an offer to restore the transferee to its *status quo*. Barring exceptional situations, such a notice and such an offer are basic to a rescission whether it be in *pais*, or by an action in equity. (*Estrada* v. *Alvarez*, 38 Cal.2d 386, 390 [240 P.2d 278]; *Neet* v. *Holmes*, 25 Cal.2d 447, 457 [154 P.2d 854]; *McCall* v. *Superior Court*, 1 Cal.2d 527, 535 [36 P.2d 642, 95 A.L.R. 1019]; Civ. Code, sec. 1691.) Under the circumstances, the right of the judgment creditor, "Long," to prevail in the instant proceedings, must be denied.

There is a further reason why the subject judgment should be sustained. It appears without conflict that as of January 4, 1961, the holders of 15,284 shares of "Empire's" outstanding stock, which constituted a majority of the voting power, had indicated their approval of the subject transfer in writing. ▮ Appellant contends that this approval is of no effect because it was obtained during the course of the hearing upon the third party claim. However, the approval required by section 3901 may be given either before or after the transfer subject thereto without any limitation as to time. (Corp. Code, § 3902.) This state of the facts demonstrates that the statute in question, i.e., sections 3901 and 3902 of the Corporations Code, is for the benefit of the stockholders alone.

Whether "Long," the judgment creditor, as against "Tu-Vu," an apparent purchaser for value without notice, was entitled to assert the alleged illegality of the issuance of 9000 shares of stock to Tanner, in whose name they appeared

---

[1]*Lost Burros Gold Min. Co.* v. *Inyo County Bank, supra*, 83 Cal.App. 679, held that the transferring corporation might not urge the invalidity of its transfer even though, under former Civil Code section 361a, such a transfer was void and of no effect. (See also *Miners' Ditch Co.* v. *Zellerbach*, 37 Cal. 543, 578 [99 Am.Dec. 300].)

on the books of the corporation, and attack the stockholder approval herein upon the ground that without these 9000 shares it was not supported by a majority of the voting power of the corporation;[2] and whether the action of the judgment creditor was barred by laches, as a matter of law,[3] are questions which need not be determined, in view of the other conclusions reached by us which support the judgment.

APPEAL FROM JUDGMENT BY HONORABLE BONSALL NOON

At the hearing on the first third party claim in this matter, after proof of title in the third claimant, i.e., "Tu-Vu," by transfer from "Empire" pursuant to resolution of its board of directors, and approval by a vote of the shareholders entitled to exercise a majority of its voting power as disclosed by its records, the trial judge interrupted the cross-examination of one of the third party claimant's witnesses with the remark: "Listen, Gentlemen, let's get on to the crux of this matter. We can go on forever on this"; indicated that the issue presented for determination, as apparently outlined by counsel, was whether 60 per cent of the stockholders had approved the transfer; directed attention to evidence showing such approval; engaged in a discussion with counsel for the judgment creditor as to whether the percentage referred to was 60 per cent of the voting power at the meeting or 60 per cent of the total shareholder voting power; noted that the 60 per cent approval requirement was founded upon a provision in the agreement under consideration; expressed the belief that a creditor could not take advantage of this provision; and concluded that the third party claim should be granted. The attorney for "Long," the judgment creditor, contended that the agreement between "Empire" and "Tu-Vu," which resulted in the transfer, was conditioned, among other things, upon approval by the shareholders of "Empire" holding 60 per cent of the voting power, and that

[2]Respondent "Tu-Vu" claims that the rule applied in *Eberhard* v. *Pacific Southwest L. & M. Corp.*, 215 Cal. 226, 228 [9 P.2d 302], protects it in the instant action. (See also *Kuhlman* v. *Pacific States S. & L. Co.*, 17 Cal.2d 820 [112 P.2d 620]; *Pores* v. *Purity Milk Co.*, 135 Cal.App.2d 305, 310 [287 P.2d 169]; and *Wachner* v. *Richardson*, 14 Cal.App.2d 422, 429 [58 P.2d 714].)

[3]The defense of laches properly is asserted against a claim of noncompliance with section 3901. (*Hamud* v. *Hawthorne*, 52 Cal.2d 78, 86 [338 P.2d 387]; *Alhambra-Shumway Mines, Inc.* v. *Alhambra Gold Mine Corp.*, 200 Cal.App.2d 322, 324-325 [19 Cal.Rptr. 208]; Ballantine & Sterling, California Corporation Laws (1962 ed.), pp. 555-556.)

the corporation's records showed that such approval had not been given; referred to section 3901 of the Corporations Code, but did not argue that the transaction in question failed to comply with that code section; made no contention that the shareholders of a majority of the voting power of the corporation had not approved the transfer; and did not suggest that Tanner's 9000 shares had been illegally issued and could not be considered in determining such majority. ''Long'' contends that the trial judge rebuffed its request for further cross-examination and to put on its case, and thus foreclosed any opportunity to make an offer of proof in connection therewith. The record belies this contention. Considerable time was consumed by both parties and the court in discussing prospective issues in the matter, and in an attempt to define those issues.

 The claim that the judgment creditor might attack the sale upon the ground that the conditions specified in the agreement between ''Empire'' and ''Tu-Vu'' had not been met, properly was rejected by the court because, (1) for approximately two years both of the parties complied with that agreement; (2) the latter was paying the monthly contract installments on the equipment which had been levied upon; and (3) stockholders of the former had made no objection to the transaction. The agreement in question was a matter between the two corporations and their stockholders; their creditors were not parties thereto; and there was no claim that the transfer was fraudulent as to the latter. ''Long'' had ample opportunity to make an offer of proof if it then intended to urge that the transfer did not comply with the provisions of section 3901, but did not do so. Under these circumstances the action of the trial court was not error. (*Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 162 [195 P.2d 416]; *Moore* v. *Rogers,* 157 Cal.App.2d 192, 197 [320 P.2d 524]; *Blackburn* v. *Union Oil Co.*, 90 Cal.App.2d 775, 778 [204 P.2d 69].)

 In support of its contention that the order of the court terminating the hearing deprived it of due process of law and is ground for reversal, appellant cites the decision in *National Auto. Ins. Co.* v. *Fraties,* 46 Cal.App.2d 431 [115 P.2d 997]. However, the facts in that case are substantially different from those in the case at bar; there the court announced its decision without giving the third party claimant an opportunity to be heard, while in the instant case there was an extended discussion between court and counsel before the former concluded that any further evidence would not be

pertinent to the issues at hand. Other than the third party claim, there were no pleadings to outline the issues to be determined and the trial judge was compelled to rely upon counsel to state appellant's position. Not having done so, it cannot now be presumed that it intended to raise the same issues thereafter raised in the hearing before Judge Lazar.

Even if it be assumed that the issues respecting the alleged illegal issuance of stock to Mr. Tanner, and the alleged consequent lack of a majority of the voting power in support of the subject transfer, were not an afterthought; that appellant intended to produce evidence in support of its contention respecting such issues; and that the evidence produced would have simulated that produced in the hearing before Judge Lazar, nevertheless, under the law and the evidence heretofore noted, appellant was not entitled to set aside the transfer by which "Tu-Vu" acquired title to the property in question from "Empire," even though that transfer did not comply with section 3901 of the Corporations Code. Any decision to the contrary would have been reversed. The judgment by Judge Noon in favor of "Tu-Vu" should be affirmed.

APPEAL FROM ORDER DENYING MOTION TO QUASH

The judgment based on the arbitration award decreed that "Long" should recover 1500 shares of Class "A" and 950 shares of Class "B" stock of "Empire;" that in the event "Empire" did not "issue and deliver" this stock to "Long" within a designated period, "Empire" should pay "Long" $24,500; and that payment of the latter amount would extinguish the obligation to issue and deliver the stock.

Upon application by the attorney for "Long," and his oral representation that 1500 shares of Class "A" stock which "Empire" had delivered to "Long" had been issued in violation of a permit, or without a permit, and that in his opinion the stock was void, the county clerk executed a writ of execution to effect recovery under the provisions of the judgment directing the payment of $24,500. "Empire" moved to quash the writ, contending that its issuance was without the scope of the clerk's authorized functions, and appeals from the order denying such motion.

Where a conditional money judgment is entered, as in the instant case, the court alone is authorized to determine whether the conditions authorizing recovery thereon have transpired. Such determination involves the exercise of a judicial function which is without the realm of the authority

conferred upon the clerk. Under such circumstances, the latter may not issue a writ of execution on the judgment except on order of court directing him to do so. (*Adams* v. *Bell*, 219 Cal. 503, 505 [27 P.2d 757].) ▮ The motion to quash should have been granted.

Each of the judgments is affirmed and the order denying the motion to quash is reversed. Tu-Vu Drive-In Corporation and Empire Drive-In Theatres, Inc. are awarded costs on appeal.

Griffin, P. J., and Stone, J.,* concurred.

*Assigned by Chairman of Judicial Council.